448 So.2d 1106 (1984)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Nell G. MARLOW, Appellee.
No. AT-72.
District Court of Appeal of Florida, First District.
March 30, 1984.
*1107 John L. Pearce of Dept. of Health and Rehabilitative Services, Tallahassee, for appellant.
William F. Daniel, P.A., Tallahassee, for appellee.
ERVIN, Chief Judge.
The Department of Health and Rehabilitative Services (HRS) appeals from a final order of the Career Service Commission (Commission), directing a verdict in favor of Marlow and requiring that she be reinstated to her former position of employment with HRS and receive back pay. We affirm in part and reverse in part.
Marlow had been employed as a food stamp supervisor in both Washington and Calhoun Counties until August 16, 1982, when her supervisor, Gill Lowe, informed her that she would begin work that week as a full-time supervisor in the Calhoun County office due to personnel problems and a heavy workload there. Marlow responded that she was not happy with the assignment and would attempt to have it changed. Marlow then obtained authorized sick leave for the period from August 19 through September 6, 1982, and upon her return on September the ninth, obtained additional approval from Lowe for the purpose of attending an appointment with her doctor. The established policy regarding sick leave, according to Lowe, required the employee to inform his or her supervisor and obtain approval in advance of the absence if possible, or to notify the supervisor as soon as the employee became aware of the need to be absent from work for sickness, or, in the event the supervisor was unavailable, to notify supervisor's supervisor.
Although Marlow was aware of the sick leave policy, on the day following her authorized absence of September the ninth, she called the Calhoun County office, but not her supervisor's office, to report that she would be seeing a doctor that day for testing and that she had expectations of being hospitalized for further testing. Marlow neither contacted anyone, nor appeared for work from September 10 until September 21, at which time Gill received a letter dated September 16 from Dr. Thomas, indicating that he had advised Marlow, after seeing her on the 16th, to take a medical leave of absence from work for two weeks. On September 22, Marlow *1108 called his office to inform him that she was being treated for osteoarthritis and hypertension. Finally, on October 4, Lowe received a letter from Dr. Thomas, disclosing that Marlow had been undergoing treatment since September the ninth. As a result of these absences, Marlow, on October 21, 1982, received notice of dismissal from her position, effective as of October 19, 1982.
Lowe stated that the HRS Rules of the Career Service System[1] (rules) governing the terms of Marlow's employment set forth the disciplinary actions to be applied in instances of unauthorized absences:
first occurrence ... written reprimand
second occurrence ... up to 10 days suspension
third occurrence ... up to 30 days suspension, demotion or dismissal
fourth occurrence ... dismissal
According to Lowe and the October 21 notice of dismissal, Marlow was discharged for seven occurrences of unauthorized absences, one occurrence for each of the seven consecutive days she did not appear or notify her supervisor as required by the rules, and for failure to follow the proper procedure for obtaining approved sick leave.[2] Lowe admitted that Marlow was never issued a written reprimand, nor was she suspended in accordance with the procedure outlined by the rules for first and second occurrences of unauthorized absence.
At the hearing before the Commission on the appeal filed by Marlow, the parties stipulated that the Commission should decide whether, as a matter of law, seven consecutive days of absence constitute one occurrence, or seven separate occurrences of unauthorized leave. The Commission ruled that the seven-day absence should have been treated as a first occurrence offense, rather than a multiple occurrence offense, and therefore concluded that she had been improperly disciplined. The Commission then proceeded, on its own motion, to direct verdict in favor of Marlow over objection by counsel for HRS, who argued that the Department had not been permitted to present a case on the issue of whether just cause existed for the dismissal. The Commission subsequently entered a written final order, finding that no just cause existed for the dismissal, and directing that Marlow be reinstated with back pay.
We disagree with HRS' first argument that the seven consecutive days of absence constitute multiple occurrence offenses. The Department's rules provide an incremental approach for disciplining various occurrences of unauthorized absences; they establish a procedure for placing the employee on notice that a penalty increasing in severity will be imposed for each occurrence  not day-of unauthorized absence. Because the sanctions for the first and second occurrences were never inflicted upon Marlow, HRS could not properly bypass the procedure outlined by the rules and exact the most severe penalty of dismissal for a first occurrence. In so stating, we note that employee discharge is a penal form of regulatory action. Consequently, evidence which is required to support substantially a retroactive characterization of conduct requiring discharge must be "as `substantial' as the consequences." Bowling v. Department of Insurance, 394 So.2d 165, 172 (Fla. 1st DCA 1981). In other words, there must be a record foundation, *1109 appropriate to the issue involved, supporting the action taken. See Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980).
In the present case we are asked to decide whether seven continuous days of absence should, as the Department contends, be treated as seven separate occurrences, or, as argued by the employee, one. In the absence of a statute or rule clearly articulating the agency's policy, we must look to ordinary methods of proof to see whether it supports the Department's policy determination, advanced in an adjudicative setting, that seven days of absences constitute seven separate occurrences for purposes of imposing the extreme sanction prescribed by HRS Pamphlet 60-1. As in Bowling, the agency's proof failed. It offered only evidence of the employee's unauthorized absences. It did not submit proof disclosing that there was, for example, some agency directive, or common understanding disseminated to all employees placing them on notice that each day of unauthorized leave would be considered, for purposes of the rule, a separate occurrence. Thus, because the agency's nonrule policy was not susceptible to verification by conventional proof, a record foundation was lacking. Cf. McDonald v. Department of Banking and Finance, 346 So.2d 569, 582 (Fla. 1st DCA 1977).
Although HRS' argument at first seems compelling that an affirmance of the Commission's conclusion might result in an infinite number of days of an employee's unauthorized absence being regarded as one occurrence, the Florida Rules of Administrative Procedure[3] and the HRS Personnel Rules[4] permit HRS to avoid this anomalous result by regarding an employee as having abandoned his position after three consecutive days of unauthorized absence. Accordingly, we affirm the Commission's determination that, under the circumstances, the seven consecutive days of absence was a single offense occurrence.
We reverse, however, the order of the Commission, insofar as it makes findings of fact and conclusions of law on the issue of just cause for dismissal, and directs a verdict in favor of Marlow without permitting HRS to present its case. See Dodge v. Weiss, 191 So.2d 71 (Fla. 1st DCA 1966). The Commission's resolution of the multiple occurrence issue did not resolve the separate question of whether just cause existed for the dismissal. See Section 110.309, Fla. Stat.; Adams v. Lake City Community College, 404 So.2d 148 (Fla. 1st DCA 1981). More specifically, the Commission should have determined whether Marlow's failure to seek her supervisor's prior approval to be absent from work during the applicable periods in September and October, 1982 could be considered as an abandonment of her position. See Florida Administrative Code Rules 22A-8.02(5) and 22A-8.11(2).
The order of the Commission is affirmed in part, reversed in part, and remanded for the Commission to conduct further proceedings on the issue of whether just cause existed for HRS' dismissal of Marlow from employment.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] HRS Pamphlet 60-1, Employee Handbook March 1, 1979, p. 28.
[2] The October 21, 1982 notice set forth the following bases for dismissal: HRS Pamphlet 60-1 at p. 28, see text accompanying note 1, supra; Fla. Admin. Code Rule 22A-8.11(2)(a), (c) which provides:

(2) Use of earned sick leave
(a) Use of sick leave shall not be authorized prior to the time it is earned and credited to the employee and shall only be used with the approval of the proper authority within the agency. Unused sick leave credits earned prior to October 1, 1973 shall be used prior to any sick leave credits earned.
* * * * * *
(c) Notification of absence due to illness, injury, or exposure to a contagious disease shall be given to the appropriate supervisor by the employee or the employee's representative as soon as possible on the first day of absence.
[3] Fla. Admin. Code rules 22A-8.02(5)(a)3. and 22A-7.10(2)(a).
[4] HRS Pamphlet 60-1 at p. 13.