969 So.2d 389 (2007)
Pamela WILLIAMS, Appellant,
v.
MIAMI-DADE COUNTY, FLORIDA, Appellee.
No. 3D06-2805.
District Court of Appeal of Florida, Third District.
July 25, 2007.
*390 Teri Guttman Valdes, Miami, for appellant.
Murray A. Greenberg, Miami-Dade County Attorney, and William X. Candela, Assistant County Attorney, for appellee.
Before COPE and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, Judge.
Pamela Williams ("Williams") asks this Court to grant her petition for writ of certiorari and quash the trial court's order affirming Miami-Dade County's ("County" or "the County") decision to terminate her employment as a corrections officer. We grant the petition and quash the circuit court's order.
I. Factual History
Williams was employed as a County corrections officer for 16 years. Prior to her termination, Williams lived with Clifford Roberson, her boyfriend of three years, who was a convicted felon on parole.[1] On March 1, 2004, Williams received a Disciplinary Action Report ("DAR") alleging that Williams had "a close personal relationship and resided with a known felon, Clifford Roberson" in violation of Department Standard Operating Procedures ("DSOP") 2.2.029 and 11-015 § V(A) and *391 (B).[2] On June 23, 2004, the Department of Corrections ("the Department") issued a termination letter based on the violations enumerated in the DAR.
DSOP 2.2.029 titled "Associating with Criminal Elements" provides that "No employee, except in the discharge of their lawful duties, may knowingly associate with persons engaged in unlawful activities."
DSOP 11-015(V)(A), titled "Inmates," prohibits employees from "maintain[ing] or develop[ing] close, personal, intimate or sexual relationships, with inmates that the employees become acquainted with while the inmates are in the Department's custody." See DSOP 11-015(V)(A)(2). DSOP 11-015(V)(A)(5) further requires an employee to notify a supervisor if a personal relationship exists between an inmate and the employee.[3]
DSOP 11-015(V)(B), titled "Ex-Inmates," states:
Association with ex-inmates (regardless of whether or not they were found guilty, sentenced, served time, etc.) does not automatically constitute a conflict which would require an end to the contact. However, the professional relationship standards applicable to current inmates applies to known or alleged ex-inmates, especially if they are, or appear to be, involved in criminal activity on a full time, part time, or an occasional basis.
In summarizing the provisions of DSOP 11-015, the Department's manual states:
[Neither] [t]he County nor the Department can tell employees whom they may or may not privately associate with. What the County expects and requires is that the employees' conduct, whether on-duty or off-duty, does not compromise the integrity of the employees of the Department or County, where that conduct is unbecoming of an employee of the County.
See DSOP 11-015(V)(D).
Pursuant to Section 2-47 of the Code of Metropolitan Dade County, Williams appealed her termination.[4] During the hearing, neither the Department nor the County contended that Roberson was "engaged in unlawful activities" as prohibited by *392 DSOP 2.2029. Following the hearing, the hearing examiner recommended that the Department's decision to terminate be sustained. The County Manager upheld the hearing examiner's recommendation, and Williams filed a first-level certiorari proceeding with the circuit court in its appellate capacity. The circuit court affirmed the County Manager's decision without a written opinion and this second-level certiorari proceeding ensued.
II. Standard of Review on Second-Level Certiorari
Review on second-level certiorari is extremely limited, as we are confined to determining whether the lower court provided due process and followed the correct law. A lower tribunal provides due process if the complaining party was given notice and an opportunity to be heard. Additionally, a circuit court's failure to follow the correct law must be "something more than a simple legal error." Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla. 2000). Indeed, we are bound to affirm the lower tribunal unless "there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Id. (quoting Haines City Community Development v. Heggs, 658 So.2d 523, 528 (Fla.1995)).
III. Analysis
This petition falls into the rare category of cases in which the lower tribunal demonstrated a violation of a clearly established legal principle that resulted in a miscarriage of justice. It is a well-established principle of law that in order to suspend or terminate "a police or other officer the charge upon which he [or she] is tried must allege jurisdictional grounds for removal and must also allege jurisdictional facts to support the jurisdictional grounds." City of Daytona Beach v. Layne, 91 So.2d 814, 815 (Fla.1957); See Department of Health and Rehab. Servs. v. Marlow, 448 So.2d 1106, 1108-09 (Fla. 1st DCA 1984). In simpler terms, the factual charges brought against an officer must be contemplated by the regulations under which she is charged and there must be some record foundation supporting the action taken. See Marlow, 448 So.2d at 1108-09.
The law is equally clear that when an officer is discharged for conduct not precisely written into a departmental rule, the rule must not be of a character which is "so amorphous that men of common intelligence must guess at [its] meaning." Jones v. City of Hialeah, 294 So.2d 686, 688 (Fla. 3d DCA 1974). Indeed, while administrative rules unquestionably may form the jurisdictional basis for a termination, such an action is allowable only "where persons of common intelligence are not required to guess at their meaning and where the employee subject to discipline was properly apprised that his [or her] conduct was proscribed by the rule." City of St. Petersburg v. Pinellas County Police Benevolent Ass'n, 414 So.2d 293, 294-95 (Fla. 2d DCA 1982).
Turning first to the charge under DSOP 2.2.029, the record indicates that the County and Department presented no evidence that Roberson was engaged in unlawful activity. Absent any facts in the record to support that charge, we must reverse the lower tribunal's decision, even under the limited nature of second-level certiorari review.
We turn now to the two other DSOPs. On its face, DSOP 11-015(V)(A) only applies to relationships between employees and "inmates." The Regulation says nothing about relationships between employees and individuals no longer incarcerated *393 by the Department.[5] Thus, we must conclude that DSOP 11-015(V)(A) does not apply to employees and former felons.[6]
In contrast, while DSOP 11-015(V)(B) could apply to the relationship at issue, we conclude that, based on the facts in the record, no reasonable person could review the provisions at issue and know that cohabitating with a former felon  especially absent evidence that the employee knew that the former felon was involved in criminal activity  would be a cause for automatic termination. To the contrary, relationships with ex-inmates are envisioned and permitted by this DSOP.
Neither the Department nor the County made any attempt to show that there exists a written rule prohibiting a corrections officer from living with a former felon and that violation of that rule is grounds for termination. In our view, without more than the text of the DSOPs discussed above and without more than the record presented by the City and the Department, Williams was not on adequate notice that merely living with Roberson subjected her to automatic termination.
Accordingly, the lower tribunal thus departed from the essential requirements of law by affirming Williams' termination. The hearing officer tried Williams as if the Department's rules prohibited contact with a former felon, and the circuit court's affirmance gave its imprimatur to such conduct. As the Supreme Court has noted, "[p]olice officers do not give up all their constitutional rights by putting on a uniform. . . . [They have] once employed and attaining seniority, an employment status entitling [them] to protection against unjust and unlawful job deprivation." Farmer v. City of Ft. Lauderdale, 427 So.2d 187, 191 (Fla.1983).
Because we find that it was a departure from the essential requirements of law to affirm the termination of Williams on the basis of a non-existent regulation, we grant the petition for writ of certiorari, quash the circuit court's order, and remand with directions to reinstate her employment.
NOTES
[1] The record is silent as to whether Roberson was ever incarcerated in the same facility in which Williams was employed as a corrections officer. The record is clear, however, that Roberson and Williams met for the first time after his incarceration had ended and that Williams ended their relationship and asked Roberson to leave her home upon learning that he had a criminal record.
[2] We need not address the other DSOP violations asserted in the DAR as they were not the basis of the hearing examiner's recommendation to sustain Williams' termination. Specifically, the hearing examiner found "that Williams violated the rule against associating with convicted felons."
[3] DSOP 11-015(V)(A)(5) provides in pertinent part:

5. Except as prescribed or authorized by this directive, employees shall refrain from any preventable contact with inmates with whom the employee may have a personal relationship (e.g., a family member, friend, sexual partner, etc.). Any employee with such a relationship shall advise their supervisor immediately by use of an Information Incident Report. After an investigation is conducted, the inmate(s) if possible, or the employee if necessary, may be reassigned to avoid the possibility of a conflict of interest between the two parties, or the appearance of such a conflict.
[4] Section 2-47 provides in pertinent part:

Any employee who has completed the probationary period may appeal the action to a hearing examiner within fourteen (14) days by requesting the same in writing of the personnel director. . . . The hearing examiner shall conduct a hearing after notice upon the charges and shall transmit his findings of facts, conclusions, and any recommendations together with a transcript of all evidence taken before him and all exhibits received by him, to the [county] manager who may sustain, reverse or modify the suspension, reduction in grade, or the dismissal. . . . The county manager shall reach his decision within thirty (30) days from the receipt of the hearing examiner's recommendations.
[5] Indeed, one of the remedies under this DSOP is to transfer the inmate in order to avoid the possibility of a conflict of interest or the appearance of such a conflict. See footnote 3 infra. As such, DSOP 11-015(V)(A) could apply only to someone incarcerated with the Department.
[6] At a minimum, absent any record evidence relating to past agency conduct, Williams could not have reasonably assumed that her relationship with Roberson fell within the scope of this DSOP.