LAGOA, Judge.
 

 Petitioner, United Automobile Insurance Company (“United”), seeks certiorari review of the circuit court appellate division’s opinion affirming a final declaratory decree entered by the county court in favor of the Respondent, Oscar Salgado, Jr. (“Salgado”). Because we find that, absent an express exclusion by the legislature, the right of rescission contained in section 627.409, Florida Statutes (2003), applies to PIP insurance contracts issued pursuant to the Florida Motor Vehicle No-Fault Law, we conclude that the circuit court sitting in its appellate capacity departed from the essential requirements of the law. Accordingly, we grant the petition for certio-rari and quash the opinion of the circuit court appellate division.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 The Florida Motor Vehicle No-Fault Law, sections 627.730-627.7405, Florida Statutes (2003), mandates certain types of no-fault insurance coverage for drivers. Here, United issued to Salgado a no-fault
 
 *597
 
 motor vehicle policy to be in effect from December 18, 2003, until December 18, 2004. The insurance application contained two separate provisions that relate to a misrepresentation of material fact. In the section entitled “Driver and Resident Information,” the application states:
 

 All persons 14 years or older, licensed or not, who reside with the applicant(s) must be listed below whether or not they are operators of the vehicles listed.
 
 Failure to provide this information shall constitute a material misrepresentation, which shall result in all insurance coverages being void.
 

 (emphasis added).
 

 Additionally, above the applicant’s signature, the application provides:
 

 The undersigned by signature hereto, represents the statements and answers made herein to be true, complete and correct and agrees that any policy may be issued or renewed in reliance upon the truth, completeness and correctness of such statements and answers and understands that falsity, incompleteness, or incorrectness may jeopardize the coverage under such policy so issued or renewed Fla. St. 627-409.
 
 It is also hereby agreed and understood that misrepresentation of a material fact on this application may cause this coverage to be declared null and void as of the effective date Fla. St. 627-409.
 

 (emphasis added).
 

 During the policy’s effective period, Sal-gado was injured in a car accident. After receiving treatment, Salgado submitted his medical expenses to United for reimbursement. After conducting an investigation, United determined that Salgado had failed to list his brother as a member of his household on his insurance application, and notified Salgado that, as a result of this material misrepresentation, his policy was cancelled as of its effective date.
 

 Upon receipt of the cancellation notice, Salgado filed a complaint for declaratory relief to determine if coverage existed notwithstanding the misrepresentation made in his insurance application. In its answer and affirmative defenses, United asserted that Salgado’s failure to list all residents of his household as required in his insurance application constituted a material misrepresentation pursuant to section 627.409, Florida Statutes (2003).
 
 [1]
 

 Subsequently, Salgado filed a motion for summary judgment contending that United failed to cancel the policy in accordance with section 627.728, Florida Statutes (2003). At the summary judgment hearing, Salgado asserted that United could not deny coverage on the basis that the policy did not exist at the time of the loss because Florida’s Motor Vehicle No-Fault Law provides that an insurer’s remedy for a material misrepresentation is to cancel the policy pursuant to section 627.728(3)(a), Florida Statutes (2003), which requires a forty-five day prospective cancellation notice, rather than to cancel the policy as void
 
 ab initio.
 

 In granting Salgado’s motion for summary judgment, the trial court found that “[sjections 627.730-7405, Florida Statutes (2003), when viewed
 
 in pari materia
 
 with § 627.728, Florida Statutes (2003), are in derogation of Defendant’s common law right to unilaterally rescind personal injury protection coverage for material misrepresentation; [and] as such, Defendant’s common law right to rescind personal inju
 
 *598
 
 ry protection coverage is abrogated by the Florida Statutes.” The trial court further reasoned that, because section 627.736(9)(a), Florida Statutes (2003), mandated United to report cancellation or non-renewal of PIP coverage to the Department of Highway Safety Motor Vehicles within forty-five days from the effective date of cancellation or non-renewal, United did not comply with the statute when it cancelled Salgado’s policy retroactively to the date of inception. The trial court further concluded that the notice of cancellation did not comply with section 627.728, which required that notice of cancellation be given to the insured forty-five days prior to the effective date of cancellation. The trial court, therefore, found that Sal-gado’s policy was valid at the time of the accident on January 31, 2004. United appealed the decision to the circuit court sitting in its appellate capacity, and the circuit court affirmed without opinion. This petition followed.
 

 II.
 
 STANDARD OF REVIEW ON SECOND-TIER CERTIORARI
 

 Our standard of review for a decision rendered by the circuit court in its appellate capacity is whether the circuit court’s decision is either a departure from the essential requirements of the law or did not afford procedural due process.
 
 See Williams v. Miami-Dade County,
 
 969 So.2d 389 (Fla. 3d DCA 2007) (“[W]e are confined to determining whether the lower court provided due process and followed the correct law.”);
 
 Loguercio v. Dep’t of Highway Safety & Motor Vehicles,
 
 907 So.2d 1267 (Fla. 3d DCA 2005). Certiorari review should only be granted when “there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.”
 
 Allstate Ins. Co. v. Kaklamanos,
 
 843 So.2d 885, 889 (Fla.2003). Clearly established law may derive from “legal sources, including recent controlling case law, rules of court, statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certio-rari review.”
 
 Id.
 
 at 890.
 

 Additionally, because the appellate division’s ruling potentially affects a large number of PIP claims processed by insurers, exercise of certiorari jurisdiction is also appropriate.
 
 See Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic,
 
 913 So.2d 1281, 1286 (Fla. 2d DCA 2005) (“In measuring the seriousness of an error to determine whether second-tier certiora-ri is available, one consideration is whether the error is isolated in its effect or whether it is pervasive or widespread in its application to numerous other proceedings.”). We further note that the circuit court appellate division’s per curiam decision in this case was followed by another trial court in another case involving the same issue.
 
 [2]
 

 Accordingly, because we find that the there has been a violation of a clearly established principle of law resulting in a
 
 *599
 
 miscarriage of justice with the potential to impact a significant number of other cases, we conclude that the exercise of second-tier certiorari is appropriate.
 

 III.
 
 RESCISSION OF INSURANCE CONTRACTS UNDER CHAPTER 627
 

 We begin our analysis by discussing the general rule of rescission and its application to insurance contracts under Florida law. Chapter 627, Florida Statutes, governs insurance rates and contracts in the State of Florida. Part II of Chapter 627, sections 627.401-627.442, is entitled “The Insurance Contract” and lays out the rules governing insurance contracts except those expressly excluded from its scope. The statutory right to rescission is set forth in section 627.409.
 

 Section 627.409, Florida Statutes (2003), provides that misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under a policy unless they are: (1) fraudulent; (2) material to the risk assumed by the insurer; or (3) the insurer in good faith would not have issued the policy or would have done so only on different terms if the insurer had known the true facts.
 
 [3]
 

 As explained by the Supreme Court in
 
 Continental Assurance Co. v. Carroll,
 
 485 So.2d 406, 409 (Fla.1986), this section is an unambiguous codification of the principle of law that “a contract issued on a mutual mistake of fact is subject to being voided and defines the circumstances for the application of this principle. This Court cannot grant an exception to a statute nor can we construe an unambiguous statute different from its plain meaning.”
 
 Id.
 
 (footnote omitted). Accordingly, where a misstatement or omission materially affects the insurer’s risk, or would have changed the insurer’s decision whether to issue the policy and its terms, the statute may preclude recovery.
 
 See
 
 § 627.409(l)(a), Fla. Stat. (2003);
 
 Carroll,
 
 485 So.2d at 409;
 
 see also Gonzalez v. Eagle Ins. Co.,
 
 948 So.2d 1, 2 (Fla. 3d DCA 2006) (“Florida law indeed gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance.”);
 
 Union Am. Ins. Co. v. Fernandez,
 
 603 So.2d 653, 653 (Fla. 3d DCA 1992) (reversing and remanding for trial on issue of material misrepresentation in insurance application; stating that “[i]f such a material misrepresentation is established at trial, the subject insurance policy would be void
 
 ab initio
 
 
 *600
 
 and, accordingly, there would be no liability insurance coverage for the subject accident”).
 

 IV.
 
 DOES THE FLORIDA MOTOR VEHICLE NO-FAULT LAW ABROGATE THE RIGHT OF RESCISSION
 

 We now turn to the question of whether the Florida Motor Vehicle No-Fault Law abrogates United’s statutory right of rescission. In considering this question, we are guided by the rule of statutory construction that “all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.”
 
 Forsythe v. Longboat Key Beach Erosion Control Dist.,
 
 604 So.2d 452, 455 (Fla.1992).
 

 Although both the Florida Motor Vehicle No-Fault Law and the statutory right of rescission are found in Chapter 627, Salgado argues that section 627.409 does not apply to the Florida Motor Vehicle No-Fault Law. We disagree. The only categories of insurance specifically excluded from Part II of Chapter 627 are:
 

 (1) Reinsurance.
 

 (2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code.
 

 (3) Wet marine and transportation insurance, except ss. 627.409, 627.420, and 627.428.
 

 (4) Title insurance, except ss. 627.406, 627.415, 627.416, 627.419, 627.427, and 627.428.
 

 (5) Credit life or credit disability insurance, except ss. 627.419(5) and 627.428.
 

 § 627.401, Fla. Stat. (2003).
 

 “It is, of course, a general principle of statutory construction that the mention of one thing implies the exclusion of another; expression unius est exclusion al-terius. Hence, where a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned.”
 
 Thayer v. State,
 
 335 So.2d 815, 817 (Fla.1976);
 
 see also Young v. Progressive Se. Ins. Co.,
 
 753 So.2d 80, 85 (Fla.2000) (“Under the principle of statutory construction, expression unius est exclusio alterius, the mention of one thing implies the exclusion of another.”).
 

 Following that principle, we must conclude that if the Legislature had intended to exclude no-fault insurance from Part II, Chapter 627, it would have included that type of insurance in the list enumerated in section 627.401.
 
 See Vargas v. Enter. Leasing Co.,
 
 993 So.2d 614, 618 (Fla. 4th DCA 2008) (“ ‘The starting point for [the] interpretation of a statute is always its language,’ so that ‘courts must presume that a legislature says in a statute what it means and means in a statute what it says there.’ ” (quoting
 
 Garcia v. Vanguard Car Rental USA, Inc.,
 
 510 F.Supp.2d 821, 829-30 (M.D.Fla.2007),
 
 aff'd,
 
 540 F.3d at 1242 (11th Cir.2008)));
 
 Haskins v. City of Ft. Lauderdale,
 
 898 So.2d 1120, 1123 (Fla. 4th DCA 2005) (“A basic canon of statutory interpretation requires us to ‘presume that [the] legislature says in a statute what it means and means in a statute what it says there.’ ” (quoting
 
 Connecticut Nat’l Bank v. Germain,
 
 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))).
 

 As such, “[w]here, as here, the language of the statute is clear and unambiguous and conveys a clear and definite meaning, the statute should be given its plain and obvious meaning.”
 
 City of Miami v. Valdez,
 
 847 So.2d 1005, 1008 (Fla. 3d DCA 2003). In this case, the express language
 
 *601
 
 of section 627.401 directly refutes Saiga-do’s position that United’s right of rescission under 627.409 is abrogated by the Florida Motor Vehicle No-Fault Law. For this Court to conclude otherwise would be a usurpation of the legislative function. Because Florida Motor Vehicle No-Fault Law policies are not expressly excluded from Part II of Chapter 627, they are, therefore, governed by that part, including section 627.409.
 

 V.
 
 AN INSURER’S FAILURE TO COMPLY WITH SECTION 627.728 DOES NOT ABROGATE AN INSURER’S ABILITY TO VOID THE POLICY AB INITIO PURSUANT TO SECTION 627.m
 

 We now address the trial court’s finding that because United’s notice did not comply with section 627.728,
 
 [4]
 
 which required that notice of cancellation be given to the insured forty-five days prior to the effective date of cancellation, the policy was valid at the time of the accident. The trial court’s finding in practice, would require that an insurer undertake a forty-five day investigation period after the effective date of such a policy in order to ascertain if the application contained any material misrepresentations. That finding, however, is contrary to well established law that “an insurance company has the right to rely on an applicant’s representations in an application for insurance and is under no duty to further investigate.”
 
 See N. Miami Gen. Hosp. v. Cent. Nat’l Life Ins. Co.,
 
 419 So.2d 800, 802 (Fla. 3d DCA 1982);
 
 see also Indep. Fire Ins. Co. v. Arvidson,
 
 604 So.2d 854, 856 (Fla. 4th DCA 1992) (“An insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry.”). While it may be better public policy to require such a practice, it is not the province of this Court to effectuate such a policy change by way of case law.
 

 Additionally, this Court, along with others, has stated that an insurer’s denial of coverage under section 627.409 is “a viable defense even in the absence of effective cancellation.”
 
 Motors Ins. Corp. v. Woodcock,
 
 394 So.2d 485, 488 (Fla. 3d DCA 1981). In
 
 Motors Insurance Corp. v. Marino,
 
 623 So.2d 814 (Fla. 3d DCA 1993), this Court held that an insurer’s failure to comply with section 627.728’s cancellation procedure did not waive the insurer’s right to rescind the policy under section 627.409. This Court found that the summary judgment entered in the plaintiffs’ favor was reversible error because the insurer had pled a “conclusively established affirmative defense of misrepresentation in the insurance application.”
 
 Id.
 
 at 815. Specifically, this Court reasoned that “[a] material misrepresentation in an application for insurance, whether or not made with knowledge of its correctness or untruth, will nullify
 
 any policy
 
 issued and is an absolute defense to enforcement of the policy. Fla. Stat., Section 627.409;
 
 Continental Insurance [A
 
 ssurance]
 
 Company v. Carroll,
 
 485 So.2d 406, 409 (Fla.1986).”
 
 Id.
 
 at 815 (emphasis added).
 

 
 *602
 
 Similarly, in
 
 Sauvageot v. Hanover Insurance Co.,
 
 308 So.2d 583 (Fla. 2d DCA 1975), the Second District concluded that section 627.409’s predecessor applied to all policies and therefore could be raised by an insurer to deny PIP insurance even where the insurer had not cancelled the policy pursuant to section 627.728’s predecessor. In affirming the trial court, the Second District reasoned, “[t]here is nothing in s 627.0852 [the predecessor to section 627.728] ... that indicates the legislature intended to preclude an insurer from defending a suit upon the policy on the statutory grounds prescribed in s 627.01081 [the predecessor to section 627.409], which are applicable to
 
 all
 
 policies.”
 
 Id.
 
 at 585 (emphasis added).
 

 Moreover, the Second District in
 
 Progressive American Insurance Co. v. Papasodero,
 
 587 So.2d 500 (Fla. 2d DCA 1991), addressed a similar situation in the context of the Claims Administration Statute. In that case, the insurer sought a declaration that the automobile policy issued to the insured was void
 
 ab initio
 
 because the insured had made a material misrepresentation as to who would operate her automobile and also failed to list a person who resided in her household. The insured argued that the insurer could not deny her coverage because it had failed to comply with the requirements of the Claims Administrative Statute, section 627.426, Florida Statutes (1989). The trial court agreed that the insured had made a material misrepresentation on the policy application but held that the insurer had to provide coverage for the claims made because it had failed to comply with the Claims Administration Statute. The Second District reversed, concluding that because the material misrepresentation voided the policy, any failure by the insurer in carrying out the requirements of the Claims Administration Statute was a nullity. The Second District held that the finding by the trial court that there had been a material misrepresentation rendered the “policy null and void from the date of inception.”
 
 Papasodero,
 
 587 So.2d at 502. Therefore, adherence to the Claims Administration Statute was irrelevant. “The Claims Administration Statute was not intended to create coverage under a liability insurance policy that never provided coverage.”
 
 Id.
 
 Although the effect of the Claims Administration Statute is to bar an insurance company from denying coverage, in this case, “there was no coverage in the first instance.”
 
 Id.See also Independent Fire Ins. Co. v. Arvidson,
 
 604 So.2d 854 (Fla. 4th DCA 1992) (adherence to Claims Administration Statute was irrelevant as policy was null and void from date of inception due to material misrepresentation).
 

 As such, we conclude that an insurer’s failure to rescind a policy in accordance with statutory cancellation procedures does not preclude or abrogate an insurer’s ability to void the policy
 
 ab initio
 
 pursuant to section 627.409.
 

 VI.
 
 APPLICATION OF SECTION 627.736(9) (a)
 

 We turn now to Salgado’s argument that section 627.736(9)(a) abrogates an insurer’s right to rescission.
 
 [5]
 
 This section states in pertinent part:
 
 *603
 
 Based on the plain and unambiguous language of this section, we find Salgado’s argument unpersuasive. First, we find that section 627.736(9)(a) applies only to “renewals], cancellation^] or nonrenewal[s].” While section 627.728(l)(b) defines the term “renewal,”
 
 [6]
 
 which is not applicable in this case, the term “cancellation” is undefined by chapter 627. “When a term is undefined by statute, ‘[o]ne of the most fundamental tenets of statutory construction’ requires that we give a statutory term ‘its plain and ordinary meaning.’ When necessary, the plain and ordinary meaning ‘can be ascertained by reference to a dictionary.’ Further, it is well-settled rule of statutory construction that in the absence of a statutory definition, courts can resort to definitions of the same term found in case law.”
 
 Fla. Dep’t of Revenue v. New Sea Escape Cruises, Ltd.,
 
 894 So.2d 954, 961 (Fla.2005) (quoting
 
 Rollins v. Pizzarelli,
 
 761 So.2d 294, 298 (Fla.2000) (citations omitted)).
 

 
 *602
 
 Each insurer which has issued a policy providing personal injury protection benefits shall report the renewal, cancellation, or nonrenewal thereof to the Department of Highway Safety and Motor Vehicles within 45 days from the effective date of the renewal, cancellation, or nonrenewal.
 

 
 *603
 
 The term “cancellation” has been defined to mean “the termination by the insured or by the insurer or both of insurance in accordance with the specific terms of a policy.”
 
 Webster’s Third New International Dictionary
 
 325 (1986);
 
 see also Black’s Law Dictionary
 
 259 (4th ed. 1968) (defining “cancellation” to mean “abandonment of contract”). The term “rescission,” however, has been defined to mean “[annulling or abrogation or unmaking of [a] contract and the placing of the parties to it in status quo.”
 
 Black’s Law Dictionary
 
 1472 (4th ed. 1968);
 
 see also Borck v. Holewinski,
 
 459 So.2d 405, 405 (Fla. 4th DCA 1984) (“The effect of rescission is to render the contract abrogated and of no force and effect from the beginning.”);
 
 Webster’s Third New International Dictionary
 
 1930 (1986) (term “rescind” defined to mean “to abrogate (a contract) by tendering back or restoring to the opposite party what one has received from him (as in cases of fraud, duress, mistake or minority”)).
 

 As such, the terms “cancellation” and “rescission” refer to two separate and distinct actions that operate to create different legal consequences.
 

 A rescission avoids the contract ab initio whereas a cancellation merely terminates the policy as of the time when the cancellation becomes effective. In other words, cancellation of a policy operates prospectively, while rescission, in effect, operates retroactively to the very time that the policy came into existence; the distinction is similar to that between divorce and annulment.
 

 2 Lee R. Russ
 
 &
 
 Thomas F. Segalla,
 
 Couch on Insurance
 
 § 30:3 (3d ed. 1995).
 

 Because “the effect of a rescission is to render the contract abrogated and of no force and effect from the beginning,” we conclude that section 627.736(9)(a) does not apply where — as here — the policy was rescinded as opposed to cancelled. When a contract is rescinded, it is as if the contract never existed in the first place. Accordingly, as the policy never came into existence, there was no contract for United to cancel.
 

 
 *604
 
 VII.
 
 CONCLUSION
 

 In concluding that United’s only remedy was to cancel the policy prospectively under section 627.728, the trial court and the circuit court appellate division in its affirmance departed from the essential requirements of the law. First, rescission under section 627.409 for a material misrepresentation has been previously applied to statutorily mandated PIP policies.
 
 See Flores v. Allstate Ins. Co.,
 
 819 So.2d 740 (Fla.2002). Moreover, the “law is well settled that if the misrepresentation of the insured were material to the acceptance of the risk by the insurer or, if the insurer in good faith would not have issued the policy under the same terms and premium, then rescission of the policy by the insurer is proper.”
 
 New York Life Ins. Co. v. Nespereira,
 
 366 So.2d 859, 861 (Fla. 3d DCA 1979). Here, the record establishes that Salgado provided United with grounds to rescind the policy.
 

 Moreover, because the Florida legislature has chosen not to exempt the Florida Motor Vehicle No-Fault Law from section 627.409, we further conclude that the trial court applied the incorrect law when it determined that the Florida Motor Vehicle No-Fault Law is in derogation of United’s right to unilaterally rescind the policy
 
 ab initio
 
 based on the undisputed material misrepresentations contained in Salgado’s application.
 

 Accordingly, we grant the writ, quash the opinion of the circuit court appellate division affirming the final declaratory decree entered in Salgado’s favor, and remand with directions to enter judgment in favor of United.
 

 Petition granted.
 

 [1]
 

 . In their respective depositions, United’s Underwriting Supervisor and PIP Litigation Adjuster testified that Salgado's failure to list his brother as a member of his household on his insurance application constituted a material misrepresentation as the unknown risk would have resulted in a higher premium.
 

 [2]
 

 .
 
 Salgado argues that certiorari review is inappropriate as the appellate court’s decision was per curiam This Court, however, has previously granted relief from the circuit court appellate division's per curiam affirmances.
 
 See Auerbach v. City of Miami,
 
 929 So.2d 693, 694 (Fla. 3d DCA 2006) (granting relief from a per curiam affirmance of circuit court appellate division);
 
 State v. Bock,
 
 659 So.2d 1196 (Fla. 3d DCA 1995) (granting petition for writ of certiorari from circuit court appellate division per curiam affirmance);
 
 State v. Richard,
 
 610 So.2d 107, 107-08 (Fla. 3d DCA 1992) (holding the trial court applied the wrong version of Florida Rule of Criminal Procedure 3.191 and granting relief from a per curiam affirmance);
 
 Kneale v. Jay Ben Inc.,
 
 527 So.2d 917 (Fla. 3d DCA 1988) (granting certiorari from per curiam affir-mance of circuit court appellate division).
 

 [3]
 

 . Specifically, section 627.409, Florida Statutes (2003), states:
 

 627.409. Representations in applications; warranties
 

 (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
 

 (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
 

 (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss. (2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.
 

 [4]
 

 . Specifically, section 627.728(3)(a), Florida Statutes (2003) states:
 

 No notice of cancellation of a policy to which this section applies shall be effective unless mailed or delivered by the insurer to the named insured and to the named insured's insurance agent at least 45 days prior to the effective date of cancellation, except that, when cancellation is for nonpayment of premium, at least 10 days’ notice of cancellation accompanied by the reason therefore shall be given. No notice of cancellation of a policy to which this section applies shall be effective unless the reason or reasons for cancellation accompany the notice of cancellation.
 

 [5]
 

 . Section 627.736(9) was amended in 2007 and moved to section 324.0221, Florida Stal-ules (2008). Chapter 324 is entitled "Financial Responsibility."
 

 [6]
 

 . Specifically, section 627.728(l)(b), Florida Statutes (2003) provides:
 

 ''Renewal” or "to renew” means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term. Any policy with a policy period or term less than 6 months or any policy with no fixed expiration date shall for the purpose of this section be considered as if written for successive policy periods or terms of 6 months.