KLINGENSMITH, J.
Hesham Moustafa and Hala Ahmed (collectively, “Homeowners”) appeal from a final summary judgment in favor of Omega Insurance Company. The trial court ruled that Omega’s rescission of Homeowners’ insurance policy was proper in light of Moustafa’s material misrepresentations in the policy application. We affirm.
*712 Homeowners purchased their home in 2003. Between 2003 and 2007, they made two insurance claims on the home. The first was made in 2005 for damage to the roof caused by Hurricane Wilma. The second was made in 2007 after a leaking shower pan caused water damage. Repairs for both claims were covered by pri- or insurers.
In October 2007, Moustafa submitted a preliminary application for a homeowner’s policy with Omega, and later signed a formal application in December 2007. Although Ahmed, Moustafa’s wife, did not sign either application, she was listed as a co-applicant and a named insured on the policy.
Moustafa did not disclose anything about the two prior claims of loss on the policy applications. Specifically, in the “Loss History” section Moustafa checked “no” to the question, “[h]ave you had any losses at this or any other location in the last three years, whether paid by insurance or not?” He also checked “no” to the question, “[h]ave you had previous water damage at the insured location?” Additionally, Moustafa signed the portion of the formal application indicating that, to the best of his knowledge and belief, there was not any unrepaired damage to the property.[1]
At the time Moustafa submitted his answers to the policy application questions, Omega had no way to verify the veracity of those answers or ascertain the existence of any prior claims; the most Omega could do was to request that applicants provide truthful information.
In reliance on Moustafa’s representations, Omega agreed to provide the requested coverage. It then issued a policy containing the following provision:
2. Concealment or Fraud
a. Under Section I—Property Coverages, with respect to all “insureds” covered under this policy, we provide no coverage for loss under Section I—Property Coverages if, whether before or after a loss, one or more “insureds” have:
(1) Intentionally concealed or misrepresented any material fact or circumstance;
(2) Engaged in fraudulent conduct; or
(3) Made false statements; relating to this insurance.
(Emphasis added).
In April 2010, the home suffered additional water damage, which Omega paid to repair according to the policy. During the course of processing this claim, Omega’s adjuster was informed of the two previous claims made in 2003 and 2007, but remained unaware that they were undisclosed on the policy application. The following year, Omega’s general managing agency renewed the policy after again failing to discover the misrepresentations on Moustafa’s applications during a policy renewal review.
One week after a notice of renewal was sent to Homeowners in August 2011, Homeowners discovered yet another water-related incident. During the course of *713 his inspection of the damage, Omega’s claim adjuster spoke with another adjuster who had been assisting Homeowners with their claim. That adjuster told Omega’s adjuster not to consider some of the damage found in the home because it was caused by the 2005 incident.
One month later, in September 2011, Omega’s Special Investigation Unit (“SIU”) started looking into prior claims filed on the home, and sent Homeowners a letter requesting additional information. In November 2011, Omega received SIU’s report about the prior losses, which detailed Homeowners’ unreported claims from 2005 and 2007. This prompted Omega to send Homeowners a letter informing them of the ongoing investigation and reserving “each and every right that it has under and pursuant to the policy of insurance in question.” Omega then had its underwriting department investigate whether those claims were disclosed on the policy applications.
As part of its investigation, Omega asked Moustafa to submit to an examination under oath (“EUO”). During the EUO, Moustafa admitted to inaccurately stating on the application that there, were not any losses regarding the home in the prior three years, and that the home did not have any previous water damage. He also admitted that there were water stains throughout the home that he had not repaired, but simply painted over sometime between 2008 and 2011. Moustafa acknowledged that he signed the application, including the statement of condition and applicant’s statement,[2] and conceded he understood that by signing he approved what was stated therein.
Shortly thereafter, Omega rescinded the policy due to Moustafa’s material misrepresentations on his application about the prior claims, water damage, and unre-paired damage, stating in a letter to Homeowners that it would not have issued the policy if it “had known the true facts surrounding [Homeowners’] application for insurance.” Homeowners then sued Omega for failing to provide coverage and payment for their losses.
Omega moved for summary judgment, asserting that it properly rescinded the policy due to Moustafa’s material misrepresentations within the applications. While Homeowners did not deny that the applications contained numerous misrepresentations in their opposition to the motion for summary judgment, they claimed that a number of issues precluded summary judgment, including: 1) whether Omega could rescind the policy when Ahmed did not sign the application; 2) whether the alleged misrepresentations were material to Omega’s decision to insure the home; and 3) whether Omega waived its right to rescind the policy. During the course of the litigation both parties also filed the deposition transcript of an assistant vice president in the underwriting department, who testified that the rescission was based on the misrepresentations regarding the loss claims, water damage, and unrepaired damage, as the policy would not have been renewed had those misrepresentations been known.
After a hearing, the trial court entered final summary judgment in favor of Omega. The court found that Omega properly rescinded the policy because: 1) the misrepresentations were material as a matter of law (as they would not enable a reasonable insurer to accurately estimate the nature of the risk); and 2) the indisputable *714 evidence showed that Omega would not have issued the-.policy if it had known the truth about the prior claims. This appeal followed.
We review “orders granting summary judgment de novo.” Wells Fargo Bank, N.A. v. Palm Beach Mall, LLC, 177 So.3d 37, 45 (Fla. 4th DCA 2015).
“When reviewing a ruling on summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party.” [Corya v. Sanders, 76 So.3d 31, 33 (Fla. 4th DCA 2011)]. “Tf the record reflects the existence of any genuine issue of material fact, or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.’ ” Shaw v. Tampa Elec. Co., 949 So.2d 1066, 1069 (Fla. 2d DCA 2007) (quoting Snyder v. Cheezem Dev. Corp., 373 So.2d 719, 720 (Fla. 2d DCA 1979)).
Dennis v. Kline, 120 So.3d 11, 20 (Fla. 4th DCA 2013).
Additionally, the construction given to the terms of an insurance policy is also subject to de novo review. Kattoum v. N.H. Indem. Co., 968 So.2d 602, 604 (Fla. 2d DCA 2007) (“The interpretation of an insurance contract is a question of law; accordingly we review de novo the trial court’s rulings.”).
“Florida law ... gives an insurer the unilateral right to rescind its insurance policy on the basis of misrepresentation in the application of insurance.” Gonzalez v. Eagle Ins. Co., 948 So.2d 1, 2 (Fla. 3d DCA 2006). Indeed, section 627.409, Florida Statutes, provides in pertinent part:
(1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the lisk or to the hazard assumed by the insurer.
(b) If the true facts had been known to. the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the sanie premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
§• 627.409(1), Fla. Stat. (2007) (emphasis added); see also United Auto. Ins. Co. v. Salgado, 22 So.3d 594, 599 (Fla. 3d DCA 2009) (“[W]here a misstatement or omission materially affects the insurer’s risk, or would have changed the insurer’s decision whether to issue the policy and its terms, [section 627.409] may preclude recovery.”).
We have stated that “[a] misrepresentation is material if it does not enable a reasonable insurer to adequately estimate the nature of the risk in determining whether to assume the risk.” Singer v. Nationwide Mut. Fire Ins. Co., 512 So.2d 1125, 1128-29 (Fla. 4th DCA 1987). Regarding the difference between the grounds for rescission based on misrepresentations that are material as a matter of law, and misrepresentations that lead an insurer to issue a policy that it otherwise would not have issued if it had known the true facts, we have explained:
'While several of the decisions finding that a misrepresentation was material as a matter of law also address the issue of whether the insurer would have actually *715 issued the policy under the same terms and same premium had it known the true facts, the consideration of that issue [is] not required in making a determination that a misrepresentation was material to the risk or the hazard assumed by the insurer. . ¡
Id. at 1128; see also Salgado, 22 So.3d at 604 (holding that “the ‘law is well settled that if the misrepresentation of the insured were material to the acceptance of the risk by the insurer or, if the insurer in' good faith would not have issued the policy under the same terms and premium, then rescission of the policy by the insurer is proper’” (emphasis added) (quoting N.Y. Life Ins. Co. v. Nespereira, 366 So.2d 859, 861 (Fla. 3d DCA 1979))).
Thé determination of materiality under section 627.409(1)(a) is generally a question of law based on “an objective view of what is material.” Singer, 512 So.2d at 1129 (discussing an earlier version of section 627.409, but concluding that materiality in this context should be based on an objective standard); see also de Guerrero v. John Hancock Mut. Life Ins. Co., 522 So.2d 1032, 1033 (Fla. 3d DCA 1988) (“Where the evidence is clear and uncon-tradicted the materiality of the misrepresentation shall be decided as a question of law.”).
In contrast, the determination to be made under section 627.409(1)(b) regarding how an insurer would have acted had it known the true facts is “one of fact requiring testimony by the insurer’s representatives” that implicates “the subjective view of what a particular insurer would or would not have deemed material if it had known the true facts.” Singer, 512 So.2d at 1129 (discussing the earlier version of section 627.409 but concluding that this determination is subjective in nature and thus requires witness testimony).
Florida courts have granted summary judgment in favor of insurers where an insured’s misrepresentation on an insurance application was , “of that character which the court can say would reasonably have affected the insurer’s judgment as to the nature of the risk and amount of premium.” Id. at 1128 (citation omitted); see also Salgado, 22 So.3d at 596-97, 604 (holding that insured’s failure to list his brother as a member of the household was a material misrepresentation that “provided [the insurance company] with grounds to rescind the policy”); Kieser v. Old Line Life Ins. Co. of Am., 712 So.2d 1261, 1262-64 (Fla. 1st DCA 1998) (affirming summary judgment because misrepresentations on a life insurance application about recent hospital stays and medical treatment were material); de Guerrero, 522 So.2d at 1032-33 (affirming summary judgment and agreeing with the trial court that misrepresentations about medical history on an application for life insurance , indisputably “affected the insurer’s willingness to accept the risk or issue the policy on the same terms”).
Moustafa admitted during his EU,0 that: 1) he inaccurately stated on the applications that there were not any losses at the home in the prior three years, and that the home did not have any previous water damage; 2) there .were water stains throughout the home that he had not repaired, but simply painted over sometime between 2008 and 2011; and 3) he understood that by signing the application, including the statement of condition and applicant’s statement, he approved what was stated therein. These admissions, as well as the unrebutted testimony of an assistant vice president in the underwriting department, were sufficient-to prove that Moustafa’s misrepresentations were material and affected Omega’s decision to issue or renew the policy. See Kieser, 712 So.2d *716 at 1262-64 (holding that misrepresentations were material based in part on the affidavit of an insurance company’s senior vice president of underwriting). -
The evidence also showed that it was only after the conclusion of its investigation (which included the EUO verifying that Moustafa made the misrepresentations on the application) that Omega formally rescinded the policy. This was entirely appropriate, as “an insurance company has the right to rely on an applicant’s representations in an application for insurance and is under no duty to further investigate.” Salgado, 22 So.3d at 601 (citation omitted); Indep. Fire Ins. Co. v. Arvidson, 604 So.2d 854, 856 (Fla. 4th DCA 1992) (“An insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry.’’).
Here,, the trial court correctly held that Moustafa’s misrepresentations were material as a matter of law because the “clear and uncontradicted” evidence, de Guerrero, 522 So.2d at 1033, established that those misrepresentations objectively prevented Omega from “adequately esti-mat[ing] the nature of the risk in determining whether to assume the risk.” Singer, 512 So.2d at 1128-29. Furthermore, the evidence supported the trial court’s conclusion that Omega would not have issued the policy if it had known about the unrepaired damage.
The Homeowners also assert that Omega could not. rescind the policy’s coverage as it applied to Ahmed because her failure to .sign the application means that she personally did not make any material misrepresentations. We- find this argument to be meritless.
The definitions section of Omega’s policy defines the “insured” as not only the named insured shown in the declarations section (i.e., Moustafa), but also the insured’s spouse if he or she resides in the same household. Here, it was not disputed that Ahmed lived with Moustafa in the home. Additionally, the Omega policy specifically disclaimed coverage if one or more insureds either: 1) intentionally concealed or misrepresented any material fact or circumstance; 2) engaged in fraudulent conduct; or 3) made false statements relating to the insurance. Thus, since Mous-tafa admitted that he misrepresented the history of the damage to the home in the policy application, his material misrepresentations were properly imputed to Ahmed, thereby entitling Omega to rescind her coverage as well.
In sum, there was no genuine issue of material fact regarding whether Moustafa concealed or misrepresented the prior damage to the home. His misrepresentations were material as a matter of law, and would have affected Omega’s decision to insure the home. Accordingly, we affirm the final summary judgment rendered in this case.

Affirmed.

GROSS and FORST, JJ., concur.

. This court has held that "summary judgment is rarely proper in ‘knowledge and belief' cases because the issue usually ‘turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge.’ ” Casamassina v. U.S. Life Ins. Co., 958 So.2d 1093, 1100-01 (Fla. 4th DCA 2007) (quoting Cohen v. Kravit Estate Buyers, Inc., 843 So.2d 989, 991 (Fla. 4th DCA 2003)). However, Homeowners did not preserve this issue for appellate review, and summary judgment was granted on other grounds in addition to Moustafa’s misrepresentation about the damage to the home.

. These statements were included as part of the application, and included additional representations regarding the history of the home to assist Omega in making its various underwriting decisions, including policy coverage and premium cost.