[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14068
Non-Argument Calendar
_____

D.C. Docket No. 9:07-cv-80241-DTKH

DOLPHIN LLC,
a Florida Limited Liability Company,

Plaintiff - Counter Defendant - Appellant,

versus

WCI COMMUNITIES, INC.,
a Delaware Corporation,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 1, 2013)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

A buyer of a condominium unit brought this suit against the seller, claiming

violations under the Interstate Land Sales Full Disclosure Act[1] ("ILSFDA"), 15

---

[1] The relevant provisions of the ILSFDA provide:

(a) Prohibited Activities
It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—
(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title—
…
(B) to sell or lease any lot unless a printed property report . . . has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee
…
(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title—
…
(B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision.
…
(d)  Additional authority for revocation of nonexempt contract or agreement at option of purchaser or lessee; time limit; applicability
Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide—
(1) a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located
…
may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement.

15 U.S.C. § 1703.

2

U.S.C. §§ 1701-1720, and the Florida Deceptive and Unfair Trade Practices Act[2] ("FDUTPA"), Fla. Stat. §§ 501.201-501.213.  The District Court granted the seller's motion for summary judgment, concluding that the buyer failed to show that the development containing the condominium unit was subject to the ILSFDA or that the seller violated the FDUTPA.  We affirm.

I.

On September 7, 2004, Dolphin, LLC, entered into a residence purchase contract to buy a condominium unit in an unfinished building called One Singer Island from WCI Communities, Inc., the developer and owner of the property.  To secure its right to purchase the unit, Dolphin deposited $560,000 with an escrow agent.  When it was time to close on the property, Dolphin refused and demanded the return of its deposit.  WCI denied the demand.

On March 14, 2007, Dolphin filed suit in the United States District Court for the Southern District of Florida, seeking rescission of the contract, the return of the $560,000 deposit, and attorney's fees based on an attorney-fee provision in the contract.  The amended complaint asserted two claims against WCI.  First, Dolphin claimed that WCI violated several provisions of the ILSFDA by (1) making untrue

---

[2]  The relevant provision of the FDUTPA provides:

Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Fla. Stat. § 501.204(1) (West 2013).

statements of material fact in connection with the sale, in violation of 15 U.S.C. § 1703(a)(2)(B); (2) failing to provide Dolphin with a property report, in violation of id. § 1703(a)(1)(B); and (3) failing to include the terms required by § 1703(d) in the contract.  Second, Dolphin claimed that WCI violated the FDUTPA by representing that a WCI-affiliated title company charged the "minimum" rate allowable under Florida law for title insurance—when in fact, according to Dolphin, no minimum rate exists.  Dolphin also asserted that WCI's failure to provide a promised completion date while accepting a deposit constituted an unfair trade practice.[3]

In its answer, WCI claimed that the transaction was exempt from the ILSFDA and denied that it violated the FDUTPA.  WCI also brought a counterclaim for breach of contract, seeking a judgment in the amount of $560,000 and attorney's fees for defending Dolphin's action and prosecuting its counterclaim based on the contract's attorney-fee provision.[4]  On November 23, 2007, WCI moved for summary judgment on all claims brought by Dolphin.  WCI

---

[3] Dolphin does not pursue this line of argument in the instant appeal.

[4] The attorney-fee provision provides:

Attorney Fees and Costs: In connection with any alternative dispute resolution proceedings or litigation, including appellate proceedings, arising out of this Contract, the prevailing party shall be entitled to recover attorneys' fees and costs at trial, bankruptcy court and all appellate levels.

Record, Vol. 1, No. 1, Ex. A, at 9.

did not move for summary judgment on its counterclaim.  On November 26, 2007, Dolphin moved for partial summary judgment on its ILSFDA claim and on WCI's affirmative defense that asserted WCI was exempt from the ILSFDA's requirements.

The District Court granted summary judgment in favor of WCI and denied Dolphin's motion.  The court ruled that Dolphin had failed to present evidence from which a reasonable jury could conclude that One Singer Island was subject to the provisions of the ILSFDA.  In particular, the court found that there was no evidence to suggest that One Singer Island was advertised in common with other developments—a finding that would have placed the property under the ILSFDA.  The court also ruled against Dolphin's FDUTPA claim.  Noting that the Florida Insurance Commission is authorized by statute to set a specific premium to be charged by title insurers in the State of Florida, the court found that labeling this premium as the "minimum rate promulgated by the Florida Department of Insurance" was not misleading.  In addition, the court also noted that Dolphin failed to state a claim under the FDUTPA because it did not plead any facts indicating that WCI's alleged misrepresentation was the cause of Dolphin's claimed damages.  On February 20, 2008, the court entered final judgment against Dolphin and in favor of WCI.  The court did not expressly address WCI's

5

counterclaim for breach of contract in its final judgment, but it reserved jurisdiction to award attorney's fees.

On February 22, 2008, Dolphin filed a notice of appeal. A panel of this court dismissed the appeal as premature, holding that the judgment of the District Court was not final under 28 U.S.C. § 1291 because the question of attorney's fees constituted a substantive issue of the case that had not been resolved. Dolphin LLC v. WCI Cmtys., Inc., No. 08-10875, slip op. at 5 (11th Cir. Feb. 23, 2012). On July 12, 2012, on remand, the District Court entered a judgment that awarded attorney's fees to WCI for both defending Dolphin's action and prosecuting its own counterclaim, and then dismissed the case.

Dolphin now appeals, claiming that the District Court erred in ruling that (1) Dolphin failed to show that the transaction was subject to the ILSFDA; (2) WCI's description of "minimum rate" was not a violation of the FDUTPA; and (3) WCI was entitled to attorney's fees under the contract.

## II.

We review a district court's grant of summary judgment de novo. Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005). In conducting this review, we view the facts and all reasonable inferences from the record in the light most favorable to the non-moving party. Id. The moving party bears the burden of establishing the absence of a genuine issue of material fact and that it is entitled to

judgment as a matter of law.  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002).  The non-moving party bears the burden of presenting evidence of each essential element of his claim, such that a reasonable jury could rule in his favor. Id.

A.

Dolphin's ILSFDA claim depends on whether it can establish that the properties at One Singer Island were marketed under a common promotional plan, which would bring One Singer Island within the ambit of ILSFDA's requirements. WCI has indicated that One Singer Island is exempt from the ILSFDA because the development contains only fifteen condominium units.  See 15 U.S.C. § 1702(a)(1) ("[T]he provisions of this chapter shall not apply to the sale or lease of lots in a subdivision containing less than twenty-five lots.").  Dolphin contends, however, that WCI does not qualify for this exemption because the units at One Singer Island were marketed together with units from The Resort at Singer Island ("The Resort"), another development owned by WCI, under a common promotional plan. There are over 100 units between One Singer Island and The Resort.  If the number of units offered by these two developments were counted together, One Singer Island would not qualify for an ILSFDA exemption.

A common promotional plan is presumed to exist between multiple developments where (1) the land is offered for sale by a single developer or

7

developers acting in concert and (2) the land is "contiguous or is known, designated, or advertised as a common unit or by a common name." Id. § 1701(4).[5]  If these two elements are satisfied, the number of units in the developments shall be counted together, without regard to the number of units covered by each individual development, when determining whether the developments qualify for an ILSFDA exemption.  Id.

Dolphin argues that it was entitled to a presumption that there was a common promotional plan between One Singer Island and The Resort because it presented evidence that satisfied the Department of Housing and Urban Development ("HUD") enforcement guidelines for the ILSFDA.  These guidelines describe when HUD will presume that a common promotional plan exists: "If there is [1] common ownership or if the developers are acting in concert, and [2] there is [i] common advertising, [ii] sales agents or [iii] sales office, a common promotional plan is presumed to exist."  Guidelines to the Interstate Lands Sales Registration Program, 61 Fed. Reg. 13,596, 13,602 (Mar. 27, 1996).  Dolphin presented evidence that WCI owned One Singer Island and The Resort.  It also presented evidence that these developments had a common sales office and common sales agents.  The record indicates that WCI's employees identified

---

[5]  The developments at issue are not contiguous.  Dolphin must establish that the lands are known, designated, or advertised as a common unit or by a common name to prevail.

themselves as sales agents for both developments.  The record also includes correspondence from sales associates regarding One Singer Island on letterhead listing The Resort's address, suggesting that One Singer Island and The Resort maintained a common sales office.  In sum, the record suggests that WCI's activities would qualify for a common-promotional-plan presumption under the HUD guidelines.

Dolphin claims that this was sufficient to survive summary judgment.  It argues that the HUD guidelines constitute an agency interpretation of the term "common promotional plan" and are entitled to deference under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  The HUD guidelines, however, are not entitled to Chevron deference because they lack the force of law.  See Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S. Ct. 1655, 1662, 146 L. Ed. 2d 621 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant Chevron-style deference."); Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 858 n.7 (11th Cir. 2009) ("Because the HUD Guidelines are not published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment, they do not deserve full Chevron deference.") (internal quotation marks and citation omitted); see also

9

Guidelines to the Interstate Lands Sales Registration Program, 61 Fed. Reg. at 13,598 (indicating that these provisions are only guidelines, not HUD regulations to be codified in the Code of Federal Regulations).  The HUD guidelines are entitled to respect but only to the extent they are persuasive.  Christensen, 529 U.S. at 587, 120 S. Ct. at 1663.

We are not persuaded by the guidelines.  The fact that WCI had sales agents who were authorized to sell units in either development does not warrant a presumption that these properties were advertised under a common promotional plan.  Nor does a common sales office add any force to Dolphin's argument.  According to the record, The Resort is up the street from One Singer Island.  That only one office was used to market both properties tells us little about whether The Resort and One Singer Island were offered under a common promotional plan.  If anything, it only suggests that WCI did not find it useful to have more than one office.  Accordingly, common ownership and the mere presence of common sales agents and a common sales office do not warrant a presumption of a common promotional plan because these facts only tell us who was marketing the properties and from where.  They tell us nearly nothing about how the properties were marketed.  These facts alone fail to answer the only relevant question: whether the properties were advertised together, either as a common unit or by a common name.

10

Dolphin next argues that it has satisfied its burden even without the help of the HUD guidelines. The only other substantive contention that Dolphin offers is that the units at The Resort and One Singer Island shared a common name. Dolphin claims that a reasonable juror could conclude that the mention of WCI's name in the promotional materials for The Resort and in those for One Singer Island constitutes advertising the properties by a common name. Dolphin cites United States v. Dacus, 634 F.2d 441 (9th Cir. 1980), for support. In Dacus, the Ninth Circuit found that eight differently named subdivisions were sold under a common promotional plan because they were collectively known by one or two common names, were offered in aggregate newspaper advertisements, and were sold via a common sales office and sales associates. Id. at 443–44. One of the two common names in Dacus was the name of one of the corporate owners of the developments, Nevada Land Builders, Inc. Id. at 443. Similarly, Dolphin argues, because WCI's name appears on the promotional materials of The Resort and One Singer Island, these developments should be regarded as being advertised by a common name.

Dolphin has failed to show how Dacus aids its cause. There is nothing in the record that indicates that The Resort and One Singer Island are "known collectively," id. at 444, by the common name WCI. This notion, in fact, is belied by the record. The only advertisement of One Singer Island presented does not

11

mention The Resort and only refers to WCI as the owner of the development. There is nothing in the record indicating that The Resort and One Singer Island were known, designated, or advertised as WCI. This is in contrast to Dacus, where the developments were advertised in the aggregate and known collectively by the name of the corporate owner. Dolphin cannot conflate the statutory elements of common ownership and common name to establish the presumption of a common promotional plan.

Dolphin also argues that WCI used The Resort as a common name to advertise properties at One Singer Island by luring prospective buyers with The Resort name and then marketing One Singer Island units once buyers arrived at The Resort development. Whatever the merits of this argument, we do not address it here because it was not made before the District Court. Sterling Fin. Inv. Grp., Inc. v. Hammer, 393 F.3d 1223, 1226 (11th Cir. 2004) ("[A]rguments not presented in the district court will not be considered for the first time on appeal.") (citation omitted).[6]

Dolphin has only shown that The Resort and One Singer Island share staff and sales offices. It has failed to present any evidence from which a reasonable

---

[6] Dolphin's other evidence shows that the One Singer Island promotion materials offer the ability to use amenities at other WCI projects. We agree with the District Court that offering amenities at other developments is not evidence that WCI marketed One Singer Island units together with the units at these other developments.

12

juror could conclude that these developments were marketed or advertised as a common unit or by a common name.  Accordingly, the District Court did not err in granting summary judgment in favor of WCI on this claim.

### B.

Dolphin next claims that WCI violated the FDUTPA by making a misleading statement of material fact in the residence purchase contract regarding the rate that a WCI-associated title company would charge for title insurance.[7]  The relevant provision comes from an exhibit to the contract.  It states that if Dolphin elected to purchase title insurance from First Fidelity Title, a wholly owned subsidiary of WCI, then Dolphin would be charged the "[m]inimum rate promulgated by the Florida Department of Insurance."  Record, Vol. 1, No. 1, Ex. A, at 25.  According to Dolphin, the Florida Department of Insurance does not publish legally binding minimum title insurance rates; instead it issues a "promulgated rate," a portion of which title insurance agents can negotiate down with customers.  Though the contract states that Dolphin had "the right to use an attorney or title company chosen by [Dolphin] in connection with the title-related aspects of the purchase of the Unit," id. at 3, and that Dolphin was "free to shop around to determine that [it was] receiving the best services and the best rate for

---

[7]  Dolphin also argued that a violation of the ILSFDA was a per se violation of the FDUTPA.  Because Dolphin has failed to show a violation of the ILSFDA, its FDUTPA claim on that ground also fails.

these services," id. at 25, Dolphin nevertheless contends that the use of the word

"minimum" is misleading because it induces a prospective purchaser "into

believing that the rate charged by [WCI's] affiliated business is the bare minimum

available charged by all title companies," Record, Vol. 1, No. 1, at 4.

To state an FDUTPA claim, Dolphin must allege (1) a deceptive act or

unfair trade practice; (2) causation; and (3) actual damages.  Rollins, Inc. v.

Butland, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).  As the District Court

pointed out, Dolphin made no allegation and presented no evidence that the

allegedly misleading statement caused Dolphin's claimed damages.  Because

Dolphin failed to establish one of the elements of its FDUTPA claim, WCI was

entitled to summary judgment on this claim.

### C.

Lastly, Dolphin contests the District Court's order awarding attorney's fees

to WCI based on the attorney-fee provision in the contract.  The provision states

that the prevailing party in disputes arising out of the contract is entitled to recover

attorney's fees from the non-prevailing party.  As discussed above, WCI prevailed

on all claims in District Court and is thus the prevailing party.  Therefore, we need

only determine whether Dolphin's claims "arose out of" the contract.

The contract is governed by Florida law.  Record, Vol. 1, No. 1, Ex. A, at 9.

Under Florida law, claims arise out of a contract if they are inextricably

intertwined with the contract.  Caufield v. Cantele, 837 So. 2d 371, 379 (Fla. 2002).  Dolphin argues that WCI is not entitled to attorney's fees under the contract because its claims are based on WCI's failure to perform its statutory obligations, not obligations incurred under the contract.  Because the ILSFDA and FDUTPA have their own attorney-fee provisions and because Dolphin's claims are based on the failure to fulfill statutory obligations, Dolphin contends that the ILSFDA and FDUTPA attorney-fee provisions are the only recourse WCI has for obtaining attorney's fees.  According to this reasoning, because WCI did not seek attorney's fees under these provisions, the District Court erred in awarding attorney's fees to WCI.[8]

This argument is without merit.  Dolphin's claims cannot be separated from the contract with WCI.  Dolphin's claimed damages are for the deposit that it provided to an escrow agent pursuant to the terms of the contract.  Dolphin's FDUTPA claim is based on allegedly misleading statements of material fact within the contract.  Dolphin's ILSFDA claim is based in part on the contract's failure to

---

[8] Dolphin argues that WCI's request for attorney's fees was limited to its counterclaim for breach of contract and that, unless it prevailed on its counterclaim, it could not recover its attorney's fees.  And since the District Court did not expressly grant WCI judgment on the counterclaim, it could not award WCI attorney's fees.  This argument is meritless.  First, nothing in WCI's request for attorney's fees limited the request to its breach of contract claim—nor should it have done so, as both the claims and the counterclaim arose out of the contract.  Second, WCI prevailed on its counterclaim even though the court did not expressly grant judgment thereon.  The counterclaim was based on the same allegations as those contained in WCI's answer to Dolphin's statutory claims—namely, that Dolphin was bound by a legally enforceable contract.  Because WCI defeated Dolphin's claims, it necessarily prevailed on the allegations on which the counterclaim was based.

include provisions required by the ILSFDA.  In sum, Dolphin has alleged no claim that could exist without the contract.  We hold that all claims in this litigation are inextricably intertwined with the contract and therefore arise out of the contract. Accordingly, the District Court did not err in awarding WCI attorney's fees pursuant to the attorney-fee provision of the contract.

## III.

For the foregoing reasons, the District Court is

AFFIRMED.