[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10465
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-14030-DLG

JOSHUA KINCAID,

Plaintiff - Appellant,

versus

ALLSTATE INSURNACE COMPANY,

Defendant,

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 30, 2014)

Before HULL, FAY and COX, Circuit Judges.

PER CURIAM:

This case arises from an automobile accident caused by the Plaintiff, Joshua Kincaid. While driving under the influence of alcohol, Kincaid severely injured Deon Vanzyl. Kincaid's insurer, Allstate Property and Casualty Insurance Company ("Allstate"), aggressively sought to settle with Vanzyl for Kincaid's full policy limits. However, Vanzyl's attorney rejected the terms of the release Allstate prepared, refused to consider additional settlement offers, and filed suit in a Florida state court. Vanzyl ultimately received a $16 million dollar judgment. With this judgment secured, Vanzyl made Kincaid agree to bring this bad-faith claim against Allstate in exchange for a delay and possible satisfaction of the judgment. The district court granted Allstate's summary judgment motion. Kincaid appeals. Because we find no error in the district court's reasoning, we affirm.

## I. Facts and Procedural History

In April 2006, Kincaid drove his automobile out of a parking lot and into the path of Vanzyl's motorcycle. At the time of the accident, Kincaid was 17 years old and insured under a policy issued by Allstate to his parents with $100,000 in bodily injury liability coverage. Kincaid was legally impaired by alcohol and received a DUI charge for the accident. Kincaid admits that the accident was his fault. As a

result of the accident, Vanzyl was placed in an intensive care unit, and he remains partially paralyzed.

On April 10, 2006, Allstate received notification of the accident and began investigating. By April 24, 2006, Allstate's adjuster learned of Vanzyl's identity and injuries. Three days later, Allstate mailed Vanzyl a check and release for the full $100,000 bodily injury policy limits. At the same time, Allstate contacted Kincaid's family and attorney to tell them that Allstate would try to settle Vanzyl's claim, but that the claim may exceed the policy limits.

Attorney Brand Peters of the firm Morgan & Morgan, P.A. sent Allstate a letter saying that he was representing Vanzyl. Over the next four months, Allstate contacted Peters thirty-one times attempting to negotiate a settlement. Peters only responded three times and refused to discuss settlement each time.

On October 13, 2006, Allstate's adjuster received a letter from Peters dated October 6, 2006, proposing a settlement that must be concluded within fifteen days—that is October, 20, 2006. The letter was delayed because Peters sent it to the wrong Allstate office. The letter proposed a settlement of $6,764.45 for Vanzyl's property injury. The letter also proposed that Vanzyl would purchase the salvage of Kincaid's jeep if Allstate would reduce its offer from $1,293.00 to $1,000.00. And, the letter demanded $195.00 for damage caused to Vanzyl's helmet. Notably, the letter did not mention any settlement for personal injury. In

3

fact, Peters specifically noted that he had returned Allstate's $100,000.00 check for Vanzyl's bodily injuries, and Peters did not request a replacement. The terms of the demand letter were vague. The letter provided that,

> As for the release, Mr. Vanzyl will sign it if you get me your basic mutual general release, executed and prepared for my client's signature with provisions releasing all civil claims, including property damage, between my client and Allstate, Mr. Kincaid and the owner(s), along with the complete disclosures requested in my May 12 letter and the checks within fifteen days of the date on this letter. Otherwise, if we cannot agree to these release terms, I have enclosed a release document that we will agree to. If the latter, we just need to agree to an amount so we can insert it in . . .

Despite requesting a "basic mutual general release," the release Peters attached that "Vanzyl will agree to" only released Allstate and its insureds from property damage claims. It did not release Vanzyl from any claims or release anyone from bodily injury claims. The release provided that,

> In exchange for consideration of $_____, DEON SMUTS VANZYL ("Releasor") hereby release and forever discharges DANIEL FAIN, CHRISTINE FAIN, JOSHUA KINCAID, and ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY ("Releasees") from all claims and causes of action which Releasor now has or may hereafter accrue for property damage as a result of the automobile accident which occurred on April 7, 2006 in Martin County, Florida ("accident").

Allstate's insurance adjuster was confused about the terms of the letter, especially because Allstate had no "basic mutual general release." Because of her confusion, she hired an outside attorney, David DeArmas, the same day. The adjuster requested that DeArmas help her comply with the offer and explained that Allstate wanted to do whatever was necessary so long as its insureds were released from all claims. Although the letter was ambiguous, Allstate understood it as also

4

contemplating settlement of Vanzyl's personal injury claims for the $100,000.00 bodily injury policy limit.

DeArmas also found the request for the release confusing and thought it was impossible to ascertain exactly what Peters was requesting. The next business day, October 16, 2006, he called Peters, but did not receive an answer. DeArmas left a voicemail informing Peters that Allstate wished to settle but could not comprehend what type of release or disclosures Peters desired. DeArmas left both his home and cell phone numbers and asked Peters to call him back whenever convenient. Peters returned the call by calling DeArmas's office at 9:26 PM—when it was closed. The next day, October 17, 2006, DeArmas again attempted to contact Peters, was unable to reach him, and left the same message with both his home and cell phone numbers. Again, Peters returned the phone call by calling DeArmas's office the next day, October 18, 2006, at 7:22 AM—when it was closed. DeArmas returned the call and—upon once again receiving no answer—sent Peters a fax asking Peters to "specifically describe[e] each additional item you need from Allstate in order to accept the policy." (R. 63-15.) DeArmas never received a response that day or the next day, October 19, 2006.

By the following day, October 20, 2006, the deadline for the settlement had been reached, and DeArmas still had not received any clarification. So, DeArmas sent two releases that he believed complied with Peters's request and included a

5

note stating that the releases were not a material part of the settlement. He requested that Peters fax any proposed changes if he believed there had not been full compliance. Neither Allstate nor DeArmas received any response from Peters.

On October 23, 2006, DeArmas received a letter from Peters dated October 20, 2006, returning the settlement checks and advising that Vanzyl would be filing suit because a satisfactory release had not been provided. For the first time Peters explained that he wanted a release which was first signed by Allstate and all the insured parties that also released Vanzyl from any claims—even though no claims were made against Vanzyl and the release Peters proposed did not include such a provision. Upon receiving this clarification, DeArmas drafted the requested release and delivered it to Peters. Peters once again rejected the settlement even though it complied with his requests.

As stated in the letter, Vanzyl filed a personal injury suit against Kincaid. Throughout the suit and on appeal in state court Allstate unsuccessfully argued that it had reached a binding settlement with Vanzyl. Ultimately, a final judgment of $16,299,163.88 was entered in favor of Vanzyl. After the verdict, Vanzyl entered an agreement with Kincaid whereby Kincaid would bring this bad faith suit in exchange for a stay of the execution of the judgment and a possible satisfaction if Kincaid succeeded in this suit. In this agreement, Vanzyl was represented by

Morgan & Morgan, P.A.—the same firm that failed to provide the details necessary for Allstate to settle the case.

Kincaid filed the complaint in this suit, alleging that Allstate acted in bad faith by failing to settle Vanzyl's claim. Allstate moved for summary judgment contending that no reasonable jury could find that it acted in bad faith. The district court granted Allstate's motion and Kincaid appeals.

## II. Issue on Appeal

Whether the district court erred by granting Allstate's summary judgment motion.

## III. Standard of Review

We review a district court's grant or denial of summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1247 (11th Cir. 2013). The moving party bears the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* Once the moving party meets this burden, the non-moving party bears the burden of presenting evidence on each essential element of its claim, such that a reasonable jury could rule in its favor. As this case is based on diversity jurisdiction, we apply the law of the forum state, Florida. *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001).

## IV. Discussion

### A. The district court correctly applied Florida law as stated by the Florida Supreme Court.

Kincaid contends that the district court erred by applying law from the decisions of the Florida Supreme Court instead of applying the law from Florida jury instructions. While we find no conflict or difference between these two statements of law, our precedent is clear that we apply state law as determined by the highest court in a state, in this case the Florida Supreme Court. *Riley v. Kennedy*, 553 U.S. 406, 425, 128 S. Ct. 1970, 1985 (2008). Accordingly, the district court did not err by looking to decisions of the Florida Supreme Court to determine Florida law.

### B. The district court correctly granted summary judgment because there was no evidence of bad faith.

Kincaid contends that a reasonable jury could find Allstate was negligent because Allstate did not provide the precise release that Peters desired. According to Kincaid, this possibility of negligence also means that a reasonable jury could find that Allstate acted in bad faith.

Kincaid equates negligence and bad faith and assumes that because there may be evidence of negligence, there is sufficient evidence for a reasonable jury to find that Allstate acted in bad faith. Florida law does not support such an assumption. In contrast, the Florida Supreme Court has specifically stated that the

8

standard for liability in an excess judgment case under Florida law "is bad faith *rather than* negligence." *Campbell v. Government Employees Ins. Co.*, 306 So. 2d 525, 531 (1974) (emphasis added).

Although Kincaid is incorrect that evidence of negligence is evidence of bad faith, this is not the end of our inquiry. Under Florida law, an insurer commits bad faith when it fails to act in "good faith and with due regard for the interests of the insured." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). Florida has recognized that negligence is relevant to determining whether an insurer acted in bad faith because negligent claim handling may indicate an insurer who is acting without due regard for the insured. *Id.* Thus, to decide whether summary judgment is correct we must examine all of the evidence— including any evidence of negligence—and determine whether a reasonable jury could find that Allstate acted in bad faith.

In this case, Allstate almost immediately offered to tender its full policy limits to settle the claims against Kincaid. Allstate aggressively sought to settle the case and repeatedly contacted Peters to attempt settlement. When presented with Peters's inexplicably rushed and demanding settlement offer, Allstate did not balk or negotiate, but rather immediately sought to comply with the terms. Because Allstate was not confident it could comply with Peters's demands, it went so far as

to hire DeArmas, an outside attorney, for the sole purpose of meeting Peters' demands.

When DeArmas was also perplexed about Peters's demands, he attempted to contact Peters through phone calls, faxes, and hand deliveries. DeArmas even provided his home and cell phone numbers so that Peters could reach him at any time. After all these attempts failed, DeArmas prepared two different releases for Peters to choose between. DeArmas noted that the terms of the release were not material to Allstate and that they would be glad to make any requested changes. Peters rejected Allstate's releases, declined Allstate's invitations to revise the language or use an alternate release, and filed suit. Undaunted, Allstate sent a third release to Peters and proceeded to argue in Florida state court that the parties had reached a binding settlement.

Ultimately, Peters claims Allstate did not draft the release he desired. But, all the evidence shows this was at most a negligent mistake, and not bad faith.[1] Allstate's conduct in this case is not the behavior of an insurer avoiding settlement or acting carelessly. The evidence clearly establishes that Allstate consistently acted with due regard for Kincaid's interest. We find it hard to imagine how

---

[1] We say this is "at most a negligent mistake" because it is not clear from the evidence that it was a mistake at all. In the letter rejecting the settlement, Peters claimed to reject the release because it did not contain a provision where Allstate and its insured release all claims against Kincaid. But, the sample release that Peters said Vanzyl would agree to did not release any claims against Vanzyl either. So, the release language Peters ultimately claims he desired conflicts with the language he proposed and said his client would accept.

10

Allstate could be acting in bad faith when it had already offered the full policy limits, aggressively sought to settle the case at every turn, and even continued to argue at all points that it had reached a binding settlement with Vanzyl. Based on this evidence, the district court correctly concluded that no reasonable jury could find that Allstate acted in bad faith.

## V. Conclusion

Accordingly, the district court did not err by granting Allstate's summary judgment motion.

**AFFIRMED.**