[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14876
Non-Argument Calendar

_____

D.C. Docket No. 3:13-cv-00160-HES-JBT

JAMES A. MESSINESE,
SYLVIA MESSINESE,

Plaintiffs-Appellants,

versus

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 4, 2015)

Before HULL, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

James Messinese and Sylvia Messinese (collectively, "the Messineses") appeal the district court's order granting USAA Casualty Insurance Company (USAA) summary judgment on the Messineses' third-party bad-faith claim, as well as the court's denial of their motion for reconsideration. The Messineses contend that USAA acted in bad faith towards its insured, William Adams, because it was unable to settle the Messineses' claims within the applicable $100,000 policy limits. Because USAA diligently sought to settle the Messineses' claims against Mr. Adams, we affirm the district court's summary judgment order.

I.

On September 5, 2009, Mr. Adams, while driving intoxicated, struck a cyclist, James Messinese. The collision left Mr. Messinese with severe injuries, including paralysis and brain damage. Mr. Adams was arrested at the scene and remained incarcerated until April 23, 2012. At the time of the incident, Mr. Adams and his wife, Christina Adams (collectively "the Adamses"), held a USAA automobile insurance policy (auto policy) that provided liability coverage for bodily injuries of $100,000 per person and $300,000 per accident. The Adamses also possessed a USAA homeowner's policy, but it excluded coverage for injuries resulting from the "ownership, maintenance, use, loading or unloading of motor vehicles . . . owned or operated by . . . an insured."

2

Four days after the collision, USAA sent the Adamses a letter, advising them that the Messineses' damages could exceed the auto policy limits and that they had the right to hire an attorney.[1] USAA also inquired as to whether the Adamses held any other insurance policies. Mrs. Adams responded that the USAA homeowner's policy constituted their only other source of insurance coverage. Over the next couple of months, USAA repeatedly contacted the Messineses to discuss the claims and settle the case. During this time, USAA twice offered to pay the Messineses the full amount of the Adamses' policy limits, $100,000 for personal injuries, and issued checks in that amount. The checks were never cashed.

On January 29, 2010, Gregory Anderson advised USAA in writing that he was representing the Messineses in the instant action. Anderson demanded the following: (1) a $300,000 check for the per occurrence limits of the Adamses' auto policy[2]; (2) affidavits signed by the Adamses describing any other applicable insurance policies; (3) affidavits signed by the Adamses stating that "they have no further personal assets . . . which may be available to satisfy" the Messineses' claims; and (4) a statement from USAA that provided certain information about

---

[1] USAA sent the letter to the Adamses' home address, as listed on their auto policy.

[2] The demand for the $300,000 per accident limit included claims by James Messinese's wife and son for, among other things, loss of consortium, negligent infliction of emotional distress, and intentional infliction of emotional distress.

3

additional insurance policies, including "a statement of any policy or coverage defense which such insurer reasonably believes is available."

On February 15, 2010, USAA sent a copy of the Messineses' demand letter and a draft affidavit to Don Maris, Mr. Adams's criminal defense attorney. Mr. Adams signed the affidavit on February 23, 2010, averring that he had no other available insurance, and his only assets were two automobiles registered in his name. Mrs. Adams executed a similar affidavit. On February 25, 2010, USAA sent the Messineses a check for the $100,000 per person auto policy limit, the Adamses' affidavits, a proposed release, and a copy of the auto policy. The Messineses rejected this counteroffer and, in September 2010, filed suit against the Adamses in state court. On October 14, 2010, the Messineses offered to drop all claims against Mrs. Adams, as well as their punitive damages claim against Mr. Adams, if the parties entered into a *Cunningham*[3] agreement and stayed the case so that the Messineses could first litigate their bad-faith claim against USAA. USAA never executed a *Cunningham* agreement and did not disclose the existence of the homeowner's policy to the Messineses until April 7, 2011.

---

[3] The proposed agreement takes its name from *Cunningham v. Standard Guaranty Insurance Co.*, 630 So. 2d 179, 181-82 (Fla.1994), holding that a trial court has jurisdiction to decide an insurer's liability for bad-faith handling of a claim before the insured's liability on the underlying tort action is determined, if the parties stipulate that the bad-faith action may be tried first.

On March 3, 2011, at USAA's request, the parties held a mediation meeting. Mr. Adams, still incarcerated at this point, was not represented at the meeting.[4] Despite their efforts at mediation, the parties failed to reach an agreement and the action proceeded in state court. On January 10, 2013, the state court awarded the Messineses $3.5 million in damages.[5]

The Messineses then brought this diversity suit in federal court based on Florida's third-party bad-faith cause of action. In their complaint, the Messineses alleged that USAA caused the excess judgment by acting in bad faith towards the Adamses. USAA moved for summary judgment, which the district court granted. The court concluded that even assuming that the Messineses had produced evidence from which a jury could find that USAA breached its duty of good faith, "the undisputed facts" show that USAA's actions did not cause or contribute to the excess judgment. Specifically, the court highlighted that even if USAA had timely advised Mr. Adams of the possibility of an excess judgment and timely disclosed the existence of the homeowner's policy, the Messineses still would not have settled within the auto policy's $100,000 limit because they persisted in their belief

---

[4] On October 21, 2010, Maris notified USAA that he no longer represented Mr. Adams because the criminal case had concluded. The record demonstrates that USAA retained attorney Phil King on March 22, 2011, to defend Mr. Adams in the instant civil action.

[5] The Messineses' state-law claims against Mrs. Adams were either dismissed or disposed of at the summary judgment stage. Mr. Adams admitted to liability in a joint pretrial stipulation filed with the state court in November 2012.

that the Adamses possessed other assets and additional sources of insurance coverage to satisfy their claims.

The Messineses filed a motion for rehearing and/or reconsideration, pursuant to Fed.R.Civ.P. (Rule) 59(e).  In this motion, they argued, *inter alia*, that an affidavit from their attorney, Anderson, "clarifies the deposition testimony of Mr. Anderson" by "directly answering a hypothetical raised and relied upon in the [district court's] Order, but never previously posed during discovery by USAA." In the affidavit, Anderson explained that if USAA had timely produced a copy of the Adamses' homeowner's insurance policy, as well as factually accurate affidavits from the Adamses, the Messineses would have settled their claims within the auto policy limit of $100,000 per person.  The district court rejected the Messineses' contention that Anderson's affidavit constituted newly discovered evidence because this information was available prior to the court's adjudication of USAA's motion for summary judgment.  The instant appeal followed.

## II.

The Messineses first challenge the district court's summary judgment order. We review a district court's grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the non-moving party.  *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1247 (11th Cir. 2013).  The moving party bears the burden of establishing the absence of a genuine issue of material fact and that it is

entitled to judgment as a matter of law. *Id.* Once the moving party meets this burden, the non-moving party bears the burden of presenting evidence on each essential element of its claim, such that a reasonable jury could rule in its favor. *Id.* In a diversity action such as this, we apply the substantive law of the forum state, here Florida, along with federal procedural law. *Horowitch v. Diamond Aircraft Industrs., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011).

Under Florida law, an insurer has a duty to handle claims as one would "in the management of his own business." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 898 (Fla. 2010) (citation omitted). This "duty of good faith" includes a duty to attempt settlement "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.* at 898-99 (citation omitted). "Breach of this duty may give rise to a cause of action for bad faith against the insurer." *Id.* at 898. In Florida, either a third-party claimant or the insured may bring this claim "when an insurer has breached its duty of good faith and that breach results in an excess judgment being entered against its insured." *Id.* at 899. A valid bad-faith claim must show "a causal connection between the damages claimed and the insurer's bad faith." *Id.* at 903-04. Accordingly, to prevail in this appeal, the Messineses must provide sufficient evidence for a reasonable jury to conclude that USAA acted in bad faith and that USAA's bad faith caused the excess judgment.

7

The Messineses contend that USAA acted in bad faith by not diligently pursuing a settlement.  To fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably.  Rather, insurers must "refrain from acting solely on the basis of their own interests in settlement."  *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995).

In the instant appeal, the Messineses provide a litany of ways they believe USAA could have handled their claim better.  Even viewing the facts in the light most favorable to the Messineses, their allegations only demonstrate that USAA could have improved its claims process, not that USAA necessarily acted in bad faith.  Although evidence of carelessness may be relevant to proving bad faith, the Florida Supreme Court has expressly stated that the "standard for determining liability in an excess judgment case is bad faith rather than negligence."  *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974).  In contrast to the Messineses' contention, the record demonstrates that USAA sought to settle the claim.  Notably, only ten days after the accident, USAA agreed to tender the full limit of the Adamses' policy as soon as the claims were validly processed.

In any event, even assuming that USAA acted in bad faith, the Messineses must still show that USAA's bad faith caused the excess judgment.  The Messineses highlight two ways in which USAA allegedly breached its duty of good faith:  (1) failure to advise Mr. Adams of the possibility of an excess

8

judgment; and (2) failure to timely notify the Messineses of the existence of the Adamses' homeowner's policy. We consider each argument in turn.

First, the Messineses contend that USAA did not advise Mr. Adams that he faced the possibility of an excess judgment until after settlement talks between the parties had broken down. Specifically, on March 23, 2011, USAA sent a letter directly to Mr. Adams in prison, describing that an excess judgment was possible because the Messineses had rejected USAA's $100,000 offer. The Messineses argue that USAA had an obligation to warn Mr. Adams of a possible excess judgment to give him the opportunity to contribute some of his personal assets towards a settlement. But Mr. Adams executed an affidavit back in February 2010, indicating that he had no available personal assets, aside from his two vehicles, to contribute towards a potential settlement. *Cf. United Auto Ins. Co. v. Salgado*, 22 So. 3d 594, 601 (Fla. Dist. Ct. App. 2009) (explaining that an insurer has the right to rely on insured's representation in application for insurance and is under no duty to investigate further). Notwithstanding Mr. Adams' affidavit, the Messineses continued to believe the Adamses had other assets to satisfy their claims and repeatedly rejected the auto policy's $100,000 per person limit because they persisted in their belief that the Adamses possessed other assets to satisfy their claims. *See Bush v. Allstate Ins. Co.*, 425 F.2d 393, 396 (5th Cir. 1970) ("When an insured sues to recover [an excess judgment] on the ground that the insurer's

9

conduct in failing to effect a settlement within policy limits amounts to bad faith, it must be shown that the insurer had an opportunity to settle the claim against the insured within policy limits."). Thus, any potential failure by USAA to timely advise Mr. Adams about a possible excess judgment cannot be the cause of the Messineses' decision to foreclose settlement opportunities.

We also find no merit to the Messineses' assertion that USAA's alleged failure to disclose the existence of the Adamses' homeowner's policy was a contributing factor to the excess judgment. In the first instance, the homeowner's policy was not applicable to the instant action because the policy's terms expressly precluded coverage for automobile accidents and bodily injury arising in connection with a vehicle owned by the Adamses. Moreover, even after USAA disclosed the homeowner's policy to the Messineses on April 7, 2011, the Messineses continued to maintain that the Adamses possessed additional sources of insurance coverage. Notably, even after learning of the existence of the homeowner's policy, the Messineses never advanced a claim for benefits nor did they institute an action for a declaratory judgment to ascertain their entitlement to benefits under the homeowner's policy. Thus, as highlighted by the district court, even if USAA had provided a copy of the homeowner's policy to the Messineses shortly after the accident, the Messineses would have persisted in their assertion

that the policy provided additional coverage and would have opted to reject

USAA's settlement within the auto policy limits and proceed with their suit.

In sum, the Messineses failed to provide evidence sufficient to show that

USAA acted in bad faith and that USAA's bad faith caused an excess judgment.

Accordingly, the district court did not err in granting USAA's motion for summary

judgment.

## III.

The Messineses next argue that the district court abused its discretion in

denying its motion for rehearing and/or reconsideration.  We review the denial of a

Rule 59(e) motion for abuse of discretion.  *Drago v. Jenne*, 453 F.3d 1301, 1305

(11th Cir. 2006).  "The only grounds for granting [a Rule 59] motion are newly-

discovered evidence or manifest errors of law or fact."  *In re Kellogg*, 197 F.3d

1116, 1119 (11th Cir. 1999).  "[A] Rule 59(e) motion [cannot be used] to relitigate

old matters, raise argument or present evidence that could have been raised prior to

the entry of judgment."  *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d

757, 763 (11th Cir. 2005).

Although the Messineses assert that Anderson's affidavit demonstrates a

causal link between USAA's alleged bad faith in failing to timely disclose the

homeowner's insurance policy and the resulting excess judgment against the

Adamses, they fail to show how this information was previously unavailable to

11

them.  *See Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (noting that in order to grant a motion to reconsider based on the availability of new evidence, a court must first determine "that the evidence was not available during the pendency of the motion.").  Contrary to the Messineses' allegation that the district court "created" the causation issue in its summary judgment order, this was always an essential element of the Messineses' bad-faith suit.  *See Perera*, 35 So. 3d at 903-04 (noting that a valid bad-faith claim must show "a causal connection between the damages claimed and the insurer's bad faith.").  In this case, the contents of Anderson's affidavit were available to the Messineses during the pendency of the summary judgment proceedings, and thus do not constitute newly discovered evidence.  *See Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1310 (11th Cir. 2003) (concluding that evidence was not "newly-discovered" where the moving party could have sought to obtain the information by deposition before entry of summary judgment or moved for a continuance).

The Messineses also contend that rehearing or reconsideration was warranted because the district court committed clear error by resolving reasonable inferences in favor of USAA in its motion for summary judgment rather than the non-moving party.  They allege that the court engaged in "selective credibility determinations of key testimony that it then used to create unreasonable inferences" against the Messineses.  We disagree.  Here, the district court assumed

12

for the purposes of ruling on USAA's motion for summary judgment that USAA acted in bad faith.  As noted above, however, the Messineses failed to demonstrate that USAA's alleged bad faith resulted in the failure of settlement talks and the subsequent excess judgment.  Accordingly, we conclude that the district court did not abuse its discretion in denying the Messineses' motion for rehearing and/or reconsideration.

**AFFIRMED.**