[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17461
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-23425-MGC

LESLIE REILLY,
an individual, on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

versus

CHIPOTLE MEXICAN GRILL, INC.,
a Delaware corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 4, 2017)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Leslie Reilly appeals the summary judgment in favor of Chipotle Mexican Grill, Inc. Reilly complained, on behalf of herself and other Floridians, that Chipotle had violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–.213, and had been unjustly enriched by falsely advertising that it had eliminated genetically modified ingredients from its menu. The district court entered summary judgment against Reilly's claim that Chipotle violated the Act and dismissed as moot Reilly's motion to stay a ruling on the motion for summary judgment pending additional discovery, Fed. R. Civ. P. 56(d). Reilly challenges those rulings. The district court also entered summary judgment against Reilly's claim of unjust enrichment, and as Reilly does not contest that ruling, we deem that claim abandoned. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012). After careful consideration, we affirm.

## I. BACKGROUND

Chipotle operates a chain of fast-food restaurants that serve Mexican fare. On April 27, 2015, Chipotle announced that it had "mov[ed] to only non-GMO ingredients to make all of the food in its U.S. restaurants." On its webpage, Chipotle stated that "[t]he meat and dairy products we buy come from animals that are not genetically modified[,]" yet "it is important to note that most animal feed in the U.S. is genetically modified, which means that the meat and dairy served at Chipotle are likely to come from animals given at least some GMO feed." Chipotle

2

restaurants displayed menu panels and window clings saying "Farewell to GMOs" and "all of our food is non-GMO," and directing customers to "chipotle.com/gmo." In June 2015, Chipotle switched to menu panels and window clings stating that it served "Food with Integrity" and "[t]his includes . . . only non-GMO ingredients."

Reilly began consuming Chipotle items in 2010 on the recommendation of a friend's son. Thereafter, she visited a Chipotle restaurant an average of once a month. Reilly routinely ordered a chicken burrito with cheese, lettuce, black beans, and brown rice and paid $10.37 for her order. Reilly, who had been a personal trainer, testified that she was always satisfied with her meal.

In April 2015, Reilly noticed the signs at Chipotle touting that its ingredients were free of non-genetically modified organisms. She was "pleasantly surprised and [thought], Oh, how nice." Reilly continued to visit Chipotle monthly and to purchase the same meal for the same price. Both before and after the advertising campaign, Reilly thought that the food she received was a "good value" for her money. Occasionally, she ordered her meals online. On at least one occasion, she reviewed "briefly" the ingredient statement and noticed that it stated "the animals are given, at least, some GMO feed."

The meat and dairy products at Chipotle became a topic of discussion between Reilly, other personal trainers, and her attorney, who also had represented Reilly in a successful lawsuit against another restaurant for false advertising. Reilly

3

formed the opinion that, "if an animal is eating feed that contains GMO, its in the animal" and "in the dairy for the cheese" because the genetically modified organisms would be "in the milk, the blood, on a cellular level." Reilly thought that "the chickens that are eating the genetically modified feed . . . would have . . . the GMOs that would be in the food," but she did not investigate what effects the food had on her body.

In August 2015, after Reilly discussed the Chipotle advertising with her attorney, she stopped eating at Chipotle and began frequenting Lime, which is also a Mexican grill. Lime advertises that its food is "healthy," but does not offer ingredients without genetically modified organisms. Reilly's cost of ordering a chicken and cheese burrito at Lime was "about the same as Chipotle; maybe $1.00 more."

Reilly filed a class action against Chipotle for violating the Deceptive Practices Act and for unjust enrichment. Reilly alleged that Chipotle had "misbranded" its products because "meat and cheese products that come from animals that consume GMO feed are in fact GMO products, and not GMO-free as advertised." She also alleged that she and other consumers had "pa[id] a premium price for products that do not satisfy the minimum standards established by law for [non-genetically modified] products and . . . for products that contain ingredients that are not disclosed." Reilly defined a "genetically modified organism" as "an

4

organism whose genetic material has been altered in an unnatural way." Reilly requested injunctive relief and monetary damages.

Chipotle filed a motion to dismiss Reilly's complaint, which the district court granted in part and denied in part. The district court ruled that Reilly "fail[ed] to allege a threat of real or immediate [future] injury" to give her standing to pursue injunctive relief under the Deceptive Practices Act and dismissed without prejudice that count of Reilly's complaint. The district court ruled that Reilly's claims for monetary relief under the Deceptive Practices Act and for unjust enrichment alleged facts sufficient to avoid dismissal.

Chipotle moved for summary judgment on the ground that Reilly lacked standing to sue for a violation of the Deceptive Practices Act or for unjust enrichment. Chipotle argued that Reilly had not been deceived by the advertising because she had seen the online disclosure about the animal feed containing genetically modified ingredients and because she knew the meat had not been sourced from genetically modified animals. Chipotle also argued that Reilly had not been damaged because she "paid no more for the Chipotle food products advertised as having been prepared with only 'non-GMO ingredients' than she previously did for . . . products that were not so advertised"; she had testified that the Chipotle food was not worthless; and she was not requesting reimbursement for the meals she purchased. Chipotle attached to its motion a declaration from

5

Margaret Mellon, an expert in molecular biology, that the consumption of feed containing genetically modified organisms did not "convert a non-GM chicken, pig or cow into a GM animal" because "[t]he individual chemicals resulting from digestion, including those absorbed by the body, are not [genetically modified]." Mellon explained that "[o]rganisms are biological entities that can reproduce and respond to their surroundings" so "[t]he chemical mixtures that result from the digestion of GM grains do not have those properties; they are not living organisms."

Reilly opposed the motion for summary judgment. Reilly argued that she had been deceived and submitted a report from Catherine Adams Hutt stating that, for meat and dairy to be classified as "non-GMO," the items "must" be sourced from animals that consume feed satisfying the non-GMO standards established by the USDA National Organic Program, the Non-GMO Verification Project, and the GMO Guard. In addition, Reilly submitted a declaration disavowing she knew that "the animals from which [the] meat and dairy are sourced [for Chipotle] are fed GMOs" and clarifying that she had glanced at the ingredient statement, but had not read the disclosure about GMO feed. Reilly also argued that she had been damaged, as explained in a report prepared by economist Patrick L. Anderson that stated "consumers were willing and able to pay [6.4 percent more] for non-GMO

6

food products over other, similarly-situated products" at grocery stores, such as cans of albacore tuna, almond milk, eggs, and raw chicken.

Chipotle replied that Reilly had not been deceived or damaged. Chipotle argued that Reilly provided no evidence that the consumption of GMO feed altered the genetic composition of meats and cheeses served by Chipotle and that Hutt's report failed to reflect the expectations of a reasonable consumer. And Chipotle requested that the district court "disregard[]" Reilly's declaration as "inconsistent with her testimony." Chipotle also argued that Anderson used an unreliable method of calculating damages. Chipotle based its arguments on Anderson's testimony that he had determined "the market value of chicken burritos" based on "the price increase" at Chipotle as "embedded in the average bill over time," and not on "a separate analysis of a non-GMO and a GMO chicken burrito." Chipotle also cited Anderson's testimony that he had not "been asked to estimate [Reilly's] damages"; that he "[did not] have the information to [make that] estimate"; and that he "did not have any opinion" about how much compensation Reilly should receive.

The district court entered summary judgment in favor of Chipotle on the ground that Reilly lacked standing to sue as a class representative for a violation of the Deceptive Practices Act or for unjust enrichment. The district court ruled that Reilly presented no evidence she had been "deceived into buying . . . ingredients [at Chipotle] merely because they were non-GMO" or that she had been damaged

because the "market value of the burritos" had "stayed the same . . . before and after" the advertising. The district court also ruled that Reilly failed to identify what in the "individual food transaction . . . [made the transaction] unjust." The district court dismissed as moot "[a]ll other pending motions," which included Reilly's motion to stay consideration of the motion for summary judgment pending additional discovery.

## II. STANDARDS OF REVIEW

This appeal is governed by two standards of review. We review *de novo* the entry of summary judgment. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1247 (11th Cir. 2013). "We review a district court's decision to rule on a summary-judgment motion before all discovery disputes have been resolved for abuse of discretion." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III. DISCUSSION

Our discussion is divided into two parts. First, we address Reilly's arguments that her complaint that Chipotle violated the Deceptive Practices Act survived summary judgment because she was damaged by virtue of "receiv[ing] something of lesser market value tha[n] what she was le[d] to believe she purchased" and because she was deceived by the non-genetically modified marketing by Chipotle. Second, we address Reilly's argument that the district court

8

erred by entering summary judgment without ruling on her motion to stay for the case pending additional discovery.

*A. The District Court Correctly Entered Summary Judgment Against Reilly's Complaint That Chipotle Had Violated the Deceptive Practices Act.*

The district court did not err when it entered summary judgment in favor of Chipotle. To prevail under the Florida Deceptive Practices Act, Reilly had to prove the existence of a deceptive act or unfair practice; causation; and actual damages. *See Dolphin LLC*, 715 F.3d at 1250. And to prove actual damages, Reilly had to establish there was a "difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (internal quotation marks and citation omitted). But Reilly suffered no actual loss. Her bank records and testimony established that she paid the identical amount for her burrito before and after Chipotle began its advertising and that she paid "about the same [price] . . . or maybe $1.00 more" for a comparable meal at another Mexican grill. Reilly argues that her expert witness, Anderson, "quantified . . . the market value differential between what Chipotle . . . promised . . . and what it delivered," but Anderson testified that he did not estimate the difference in value between "a non-GMO and a GMO chicken burrito." Reilly also argues that "[c]ommon sense dictates that" a "'non-GMO' burrito . . . [is]

worth more than a 'GMO' burrito," but the Act "does not provide for the recovery of . . . speculative losses," *Rollins*, 951 So. 2d at 873.

We need not address Reilly's argument that she was deceived by the advertising. "Proof of actual damages is necessary to sustain a FDUTPA claim." *Dorestin v. Hollywood Imports, Inc.*, 45 So.3d 819, 824 (Fla. 4th DCA 2010). Because Reilly could not establish she had been damaged by the advertising, Chipotle was entitled to summary judgment. *See Dolphin LLC*, 715 F.3d at 1250.

### B. The District Court Did Not Abuse Its Discretion When It Entered Summary Judgment in Favor of Chipotle Before Ruling on Reilly's Motion to Stay.

The district court was not required to stay ruling on the motion for summary judgment when Reilly failed to provide good reasons to justify her request for the stay. A nonmovant, like Reilly, may request a continuance to take discovery. Fed. R. Civ. P. 56(d). But to obtain a continuance, Reilly had to "show by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify its opposition" to summary judgment. *Id.* Reilly failed to file an affidavit or declaration stating why she waited three months after opposing the motion for summary judgment to request a stay to conduct additional discovery. Reilly also failed to explain why she needed the discovery. Reilly's assertions that the discovery "could lead to supplemental briefing" and "could be used in opposition to summary judgment" were insufficient to justify a stay. *See Urquilla-Diaz*, 780 F.3d at 1063 ("[T]he nonmoving party must give more than 'vague assertions that

10

additional discovery will produce needed, but unspecified, facts.'"). We cannot say that the district court abused its discretion by proceeding to rule on the motion for summary judgment when Reilly failed to "specifically demonstrate how postponing [that] . . . ruling would have enabled [her], by discovery or other means, to rebut [the] showing of the absence of a genuine issue of fact" by Chipotle. *See id.*

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Chipotle.